[No. 3642. March 4, 1931.]

SAN JUAN COAL & COKE CO. v. SANTA FE, S. J. & N. R. R.

[298 Pac. 663.]

Raymond R. Ryan, of Albuquerque, for complainant.

Roberts, Brice & Sanchez, of Santa Fe, for respondent.

OPINION OF THE COURT

WATSON, J.

This is a proceeding instituted before the state corporation commission by San Juan Coal & Coke Company, against Santa Fe, San Juan & Northern Railroad, complaining of inadequate service. The carrier has removed to this court the commission's order requiring:

"* * * That respondent, Santa Fe, San Juan & Northern Railroad establish and maintain a regular train schedule and service from Bernalillo to La Ventana, and from La Ventana to Bernalillo; that not less than two trains each way per week be maintained and operated by said respondent between the two points named, preferably on Mondays and Fridays; that an agent and such agency service as is necessary to care for the business consigned to and originating at La Ventana be established and maintained at that point."

Among other matters complained of by the carrier, we have its contention that the showing made does not justify the order.

Of the two requirements contained in this order, the first concerns an "absolute" or "prime" duty of a railroad, to transport goods. Seward v. D. & R. G. R. R. Co., 17 N. M. 557, 131 P. 980, 46 L. R. A. (N. S.) 242. In that case former Justice Roberts suggested that an excess of cost over enhanced revenue might not be controlling as against the requirement.

The other requirement concerns "agents and facilities for * * * receiving and delivering freight." Const. art. 11, § 7. As to such requirements we have recently said that the question is "whether, under the conditions shown to exist, the commission's order is reasonable and

just, considering the interest and rights, both of the public and of the railroad." Denton Brothers v. A., T. & S. F. Ry. Co., 34 N. M. 53, 277 P. 34, 35; Randall v. A., T. & S. F. Ry. Co., 34 N. M. 391, 281 P. 479.

■ ·The burden of proof is on the complainant. State Corporation Commission v. A., T. & S. F. Ry. Co., 32 N. M. 304, 255 P. 394.

The shipper is a coal producer at La Ventana. The carrier owns a railroad from Ysidro to a point about four miles north of La Ventana. About two miles north of La Ventana is Tilden, the present northerly operating terminal. Through a trackage right agreement with the Santa Fe Northwestern Railway Company, the southerly operating terminal is Bernalillo.

The record presents a not unfamiliar picture. The railroad has been projected into undeveloped country. The coming of the means of transport has encouraged new industries; in this case principally coal mines. Their interests are inseparable. The existence and operation of each is indispensable to the other. Each has its own economic problems. The shipper wants the best service and the most favorable rates. The carrier wants profitable business. The present development of the region does not offer much prospect for the immediate realization of either aspiration. The problem is one of adjustment. The commission has adjusted it in the present order by requiring of the carrier a regular biweekly train service and the establishment of an agency at La Ventana.

■ The requirement of regular biweekly train service we think is shown to be reasonable and just. If the only train service were, as the shipper's witnesses rather imply, one round trip per week, it is easy to appreciate the inconvenience and business loss they point out. Shipments of coal can be made but once a week. Cars spotted at the tipple must remain on the siding a week before moving out. It is impracticable, if not impossible, for the mines at La Ventana to serve customers who require more frequent shipments. Orders for immediate shipment cannot be filled and must be sacrificed.

The carrier claims, however, that the present service has not been limited to one train a week; that it has sent out such additional trains as the convenience and necessity of its patrons have called for; that it has notified shippers of its readiness to furnish such additional service; that all of its patrons except complainant have been satisfied. Indeed, from the carrier's records for June, July, August, and early September of the past year, when business has apparently been at its worst, we judge that, except for washouts, the runs to La Ventana would have approximately averaged two per week. These records are persuasive that the carrier, without regulation, would have furnished as much train service as the present order requires and that, in considering its own and its patrons' interests, it has found so much service necessary. So, really, the principal effect of the present order is to require the carrier to schedule and make regular a part of its service which has heretofore been irregular. This may or may not involve some additional expense. It is not pointed out that it will. Clearly such service will better lend itself to the requirements of the coal business, now constituting the bulk of traffic. For three months preceding the hearing complainant's shipments were inconsiderable. But during much of that time the train service was badly interrupted and quite unreliable because of washouts. For the ten months preceding the period just mentioned complainant shipped more than forty cars a month, affording the carrier a revenue of more than $18,000. Perhaps a major part of this business was on government contracts, finally lost to complainant because the train service afforded rendered it impossible to meet specifications as to frequency and regularity of shipment. If the problem were a comparison of public benefits with a merely possible, but surely not great, additional expense, we conclude that this part of the order is shown to be reasonable and just. Remembering that it concerns an "absolute" or "prime" duty of a railroad, as suggested supra, it might be contended, though we do not here decide, that the question of expense to the carrier is not controlling.

We reach a contrary conclusion with respect to that part of the order requiring establishment of an agency at La Ventana. The station of Tilden, hereinbefore mentioned, is but two miles distant. There the carrier has a depot, a section house, two small freight houses, a freight platform, and stockyards. It has been served by an employee, not a full-fledged agent, termed a "custodian." But, before the hearing, the carrier had taken steps to constitute him an agent. No one contends that business will justify an agency at both places. Though the complainant disclaims interest in Tilden, it is evident that the real controversy is whether the agency should be at that point or at La Ventana. Tilden is the carrier's choice as the "gateway" to the San Juan basin, from which it hopes to develop, though it has not as yet derived, considerable traffic. At that point are oil and gas distribution tanks and a lumber yard. We also understand that with the establishment of the agency at Tilden, La Ventana will be within its yard limits and that freight can be billed out at Tilden. There are many more residents at La Ventana, and if passenger service and small freight service were involved, the showing in favor of La Ventana might be sufficient. But no question is here made as to passenger traffic, and the less than carload freight business is negligible; the carrier not being able to compete with the truck lines.

No dissatisfaction with present service is shown in this case except that expressed by complainant. The only considerable inconvenience shown is in billing out coal shipments. Other coal operators, apparently similarly situated, have not complained. The carrier claims they have expressed satisfaction with the service afforded. It appears that complainant has kept a man at Bernalillo to attend to billing at an expense of $100 per month. Even so, it points out, the cars of coal have left La Ventana with nothing to identify their ownership and with no receipt from the carrier.

It appears, however, that other coal shippers are satisfied to fill out a card containing the necessary data from which the train master at Bernalillo prepares a bill of

lading, mailing them two copies. Complainant refusing to accept this system, and objecting that it should have a receipt for the shipment from the beginning, the conductor was authorized to issue a bill of lading over the train master's signature. This involves some inconvenience, in that it is necessary to get in touch with the conductor at the proper times. It would not seem, however, to be a vital defect in the service. When the Tilden agent shall have been clothed with full powers, as he has perhaps already been, the only remaining inconvenience will be the necessity of going two miles to the depot to do the billing. This would not seem to be sufficient to warrant the expense of establishing and maintaining an agency service at La Ventana.

The carrier points out that the cost of establishing and maintaining the agency is not disclosed by the record, and that this alone prevents enforcement of the order. Woody v. D. & R. G. R. R. Co., 17 N. M. 686, 132 P. 250, 47 L. R. A. (N. S.) 974. However, in view of the possibility of further proceedings for the regulation of this service, we have thought it wise to express our views upon the facts here shown.

In a case such as this, where the matters regulated are entirely severable, we know of no good reason for considering the order either enforceable or unenforceable as a whole. We shall treat it as two distinct orders.

We conclude that so much of the order as requires "that an agent and such agency service as is necessary to care for the business consigned to and originating at La Ventana be established and maintained at that point" is unreasonable and unjust and should not be enforced.

We further conclude that so much of said order as requires "that respondent, Santa Fe, San Juan & Northern Railroad establish and maintain a regular train schedule and service from Bernalillo to La Ventana and from La Ventana to Bernalillo; that not less than two trains each way per week be maintained and operated by such respondent between the two points named, preferably on Mondays and Fridays," is reasonable and just and should

be enforced, and that respondent should be required to comply therewith within twenty days from the filing of this opinion. It is so ordered.

BICKLEY, C. J., and PARKER, SADLER, and HUDSPETH, JJ., concur.