34 P.(2d) 1102

**TAYLOR v. SANTA FÉ NORTHWESTERN RY. CO.**

No. 3865.

Supreme Court of New Mexico.

June 18, 1934.

Rehearing Denied Aug. 20, 1934.

Raymond R. Ryan, of Albuquerque, for appellant.

Reed Holloman, of Santa Fé, and Fred Wilson, of Albuquerque, for appellee.

HUDSPETH, Justice.

The Santa Fé Northwestern Railway Company appeals from a decree enjoining it from interfering with the receiver of the Santa Fé, San Juan & Northern Railroad (hereinafter referred to as the San Juan Railroad) in operating trains, etc., over 23.9 miles of railroad track owned by appellant, running from Bernalillo to San Isidro, in Sandoval county.

It is admitted that prior to the 17th day of April, 1931, the San Juan Railroad possessed perpetual trackage rights over the line of appellant. On that day, six weeks after the decision of this court in San Juan Coal & Coke Co. v. Santa Fé, San Juan & Northern Railroad Co., 35 N. M. 336, 298 P. 663, was handed down, an instrument called a "reconveyance, release and cancellation," was executed by the San Juan Railroad, purporting to reconvey to appellant, for a consideration of $10, all its trackage rights over appellant's line. This instrument, which is attached to and made a part of appellant's answer, contains the following clause: "It is understood and agreed by and between the parties hereto that neither of the parties is under any obligation to secure the approval of this indenture by any state or federal authority."

The trial court found that both the San Juan Railroad and the appellant railroad, the officials of both of which are the same men, had received from the Interstate Commerce Commission certificates of convenience and necessity to operate as common carriers, and that thereafter each had been engaged as a common carrier in both intrastate and interstate commerce. It also appears that, in the financial set-up presented to the Commission by the San Juan Railroad, the trackage right was valued at $200,000, and that the corporation was authorized to, and did, issue stock on the basis of that valuation.

Appellant attacks the sufficiency of appellee's reply to raise the issue of the validity of the contract of reconveyance set up in appellant's answer by way of affirmative defense. However, we hold it sufficient to preserve the issue of law, argued for the first time at the hearing on the order to show cause, as to whether or not it was necessary for the San Juan Railroad to obtain permission of the Interstate Commerce Commission in order to transfer or cancel its trackage rights over the line of appellant.

Appellant, arguing against the necessity, maintains that the "operation" referred to in paragraph 18 of section 1 of the Interstate Commerce Act, as amended by the

Transportation Act of February 28, 1920, c. 91, § 402 (49 USCA § 1, par. 18), is confined to operation which includes both local and through traffic; that, since the trackage rights here involved merely enabled the San Juan Railroad to use the line of appellant as a bridge over which to transport from San Isidro to Bernalillo traffic which had neither its point of origin nor its destination on appellant's line, the Interstate Commerce Commission was without jurisdiction over the transfer of the trackage rights or the abandonment of the service. Appellant's able counsel cites early Interstate Commerce Commission decisions supporting this view. But in F. D. No. 19918, Chicago & Alton Railroad Co. v. Toledo, Peoria & Western Railway Co., 146 I. C. C. 171, where a similar trackage right was involved, it was held by a divided Commission that the right was in reality an extension of the original line of the railroad, and so within the purview of the Commission. In that case it was said: "As stated, the operation of or over a railroad under an arrangement such as that here considered has the effect of extending the rails and service of the tenant line. In the public interest we can and do take hold of the establishment of such an arrangement, and in the same interest we can and should take hold of its discontinuance." See, also, F. D. No. 6938, Operation of Lines by Louisiana & Arkansas Railway Company, 145 I. C. C. 228.

■ It is a well-settled rule of law that contracts by railroads and other public service corporations to violate, or tending to lead them to violate, their duties to the public, are unenforceable. Williston on Contracts,

§ 1733. See, also, Farrington v. Stucky (C. C. A.) 165 F. 325; McCowen v. Pew, 153 Cal. 735, 96 P. 893, 21 L. R. A. (N. S.) 800, 15 Ann. Cas. 630; Whalen v. B. & O. Ry. Co., 108 Md. 11, 69 A. 390, 17 L. R. A. (N. S.) 130, 129 Am. St. Rep. 423; Ford v. Oregon Electric Ry. Co., 60 Or. 278, 117 P. 809, 36 L. R. A. (N. S.) 358, Ann. Cas. 1914A, 280; Cincinnati, I. & W. R. Co. v. Indianapolis Ry. Co., (C. C. A.) 36 F.(2d) 323; Attorney General v. Boston & A. R. R. Co., 233 Mass. 460, 124 N. E. 257; Lone Star Gas Co. v. Municipal Gas Co., 117 Tex. 331, 3 S.W.(2d) 790, 58 A. L. R. 797; annotation to case last stated, 58 A. L. R. 804. As stated in 13 Corpus Juris, 444: "The general rule has been laid down that any contract of a corporation by which it disables itself from performing its duties to the public. or subordinates to its private interests the rights and conveniences which it impliedly undertakes to secure to the community, is invalid as contrary to public policy. So agreements by railroad companies and other common carriers, water and gas companies, and other quasi public corporations owing duties to the public, which interfere with the performance of such duties, are illegal and void as being contrary to public policy, the question not depending on whether the public has in a particular case suffered any detriment, but on whether the contract is in its nature such as might be injurious to the public."

The reason for the invalidity of such contracts, when made without special authority, has been thus expressed by Mr. Justice Miller in Thomas v. West Jersey R. Co., 101 U. S. 71, 83, 25 L. Ed. 950: "Where a corpo-

ration, like a railroad company, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions which undertakes, without the consent of the State, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State, and is void as against public policy."

The necessary effect of the attempted reconveyance of April 17, 1931, would be an abandonment of operations by the San Juan Railroad without the consent of the Interstate Commerce Commission, prohibited by, and made a penal offense under, federal statute. It is manifest, under the foregoing principles, that the agreement was ineffective to divest the San Juan Railroad of the trackage rights here contested. Appellant can claim no rights thereunder, and the trial court rightly refused to recognize it as a defense to this suit.

Appellant maintains that the decree is inequitable because appellee is without assets and therefore unable to carry out the executory features of the contract by which the trackage rights were obtained, i. e., the payment of his part of the maintenance cost of appellant's line and the cost of dispatching trains. Although later developments may have demonstrated the correctness of appellant's contention as to the facts bearing upon this point, the evidence is unsatisfactory, and the trial court refused to make appellant's requested findings of fact thereon.

We recently quoted with approval from Lee v. Board of Com'rs of Monroe County (C. C. A.) 114 F. 744, the following: "There is no public policy recognized by the courts which allows any person, natural or artificial, to take the property of another, and appropriate it to its own use, and deny to the person who is innocent of fraud the right to reclaim it." Shaw et al. v. Board of Education of the Village of Hobbs, 38 N. M. 298, 31 P.(2d) 993, 997.

On like principle, the rule is, in the case of receivers, that the receiver cannot accept the benefit of a contract without carrying out its obligations. See 53 C. J. 151, and cases there cited. He may, under the order of court, exhaust the assets of a railroad corporation in experiments, but we know of no rule of law which permits him to levy tribute on others. See Santa Fé, San Juan & Northern Railroad Co. v. Helmick, 36 N. M. 157, 9 P.(2d) 695. That portion of the court's decree ordering " * * * that said defendant company shall forthwith order and direct the movement of all such engines, cars and trains, and the use of telephone and telegraph wires on the part of said premises between said stations at San Ysidro and the point at or near Bernalillo hereinbefore mentioned," is, in effect, a decree for the specific performance of appellant's contract with the San Juan Railroad. As a general rule, specific performance will not be decreed in favor of a plaintiff financially unable to carry out his part of the contract. Bradford, E. & C. R. R. Co. v. N. Y., L. E. & W. R. R.

Co., 123 N. Y. 317, 25 N. E. 499, 11 L. R. A. 116; Thompson v. Croff, 182 Minn. 433, 234 N. W. 688; Pomeroy, Specific Performance of Contracts (3d Ed.) § 332. Cf. Conway v. White (C. C. A.) 9 F.(2d) 863. If the facts be, as appellant contends them to be, that the assets of the corporation have already been exhausted, and that the railroad is not a going concern, the decree cannot stand, unless appellant is entitled to look elsewhere than to the receivership estate for reimbursement for expenditures which the decree will require it to make.

 It appears that no inventory or report showing the property in his hands, required by 1929 Comp. St. § 32-182, has been filed by appellee. Without disclosing to the court any of the facts upon which the railroad's ability or inability to carry out its part of the executory contract could be determined, but, on the other hand, expressly denying in his reply that plaintiff was financially unable to perform the terms, conditions, and covenants of the contract he sought to enforce, appellee asked for and obtained a decree requiring the outlay of money and performance of services by appellant. In a substantial sense, the engagements of the receiver are the engagements of the court appointing him. Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 S. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155. And ordinarily the receiver is exempt from personal liability when he acts within the order of the court appointing him. See 53 C. J. "Receivers," § 225; Gutterson v. Lebanon Iron & Steel Co. (C. C.) 151 F. 72; Killeen v. Boland, Gschwind Co., 157 La. 566, 102 So. 672; Ken-

nebec Box Co. v. O. S. Richards Corp. (C. C. A.) 7 F.(2d) 290. However, upon the receiver rests a duty of good faith and prudence in the management of the property committed to his charge. 53 C. J. 164, § 209 et seq. The protection of the rule stated may be lost by the receiver's failure to inform the court of material facts bearing upon the management of the estate. Cf. Kirker v. Owings (C. C. A.) 98 F. 499; Haines v. Buckeye Wheel Co. (C. C. A.) 224 F. 289; see Gutterson v. Lebanon Iron & Steel Co., op. cit., supra.

Although there is a broad distinction between private corporation receiverships and railroad receiverships [Wood v. Guarantee Trust Co., 128 U. S. 416, 9 S. Ct. 131, 32 L. Ed. 472; Byrnes v. Missouri Nat. Bank (C. C. A.) 7 F.(2d) 978], the latter are not excluded from the rule that a receiver should not continue the operation of a business at a loss. See note, "Continuance of Business by Receiver at a Loss," 12 A. L. R. 292; Union Trust Co. v. Curtis, 182 Ind. 61, 105 N. E. 562, L. R. A. 1915A, 699; 2 Clark, Receivers (2d Ed.) § 871. In the instant case, the receiver's action in insisting upon his contract rights implies a willingness on his part to assume its burdens and to pay appellant for services and outlays at the times and upon the basis provided for in the contract. We cannot presume the trial court would have given the relief asked for under any other assumption. The matter will be remitted to the lower court, where undoubtedly that portion of the decree relating to the executory contract will be interpreted as the personal

obligation of the receiver, unless other security is substituted.

The judgment appealed from will be affirmed, and it is so ordered.

WATSON, C. J., and SADLER and BICKLEY, JJ., concur.

ZINN, J., did not participate.