GEORGE T. ROBERTSON, APPELLANT, V. SOUTHWOOD, A
PARTNERSHIP, ET AL., APPELLEES.

447 N.W.2d 616

Filed November 3, 1989.    No. 87-898.

Steve Windrum for appellant.

Donald W. Pederson and Michael E. Piccolo, of Murphy, Pederson, Piccolo & Pederson, for appellees.

BOSLAUGH, CAPORALE, and GRANT, JJ., and SPRAGUE and MULLEN, D. JJ.

GRANT, J.

This matter began by a petition filed by plaintiff-appellant, George T. Robertson, against Southwood partnership and 11 persons described as partners in Southwood. Plaintiff initially prayed for an accounting, along with other relief, but later amended his petition to seek a declaration that he was free from all liability to the partners or the partnership because plaintiff had terminated his interest in the partnership as of April 7, 1984. Six of the original twelve partners individually answered and counterclaimed for an accounting of sums due them by virtue of their payment of plaintiff's share of necessary capital contributions. These six parties were Sharon K. Bourne, Nola M. Moog, Charmaine T. LaFontaine, Wesley W. Grady, Mark H. Richardson, and David C. Cotton. They will be referred to herein as defendants-appellees. Four of the original partners withdrew from the partnership by mutual agreement and were not partners at any time relevant to this action.

The six defendants-appellees each cross-claimed against

Elden S. Wolfe, who had been one of the original partners, alleging that Wolfe, as well as plaintiff, had failed to pay his proportionate share of the partnership obligations. Plaintiff states that Wolfe was "similarly situated to plaintiff in his action throughout," but that Wolfe "settled and compromised his dispute with the partnership prior to trial . . . and is not now part of this action or appeal." Brief for appellant at 5. It is not shown how Wolfe disposed of his obligations to the partnership or to the individual partners, including plaintiff and defendants. Wolfe has apparently taken no position in the proceeding, but he has been specifically listed as a defendant throughout the case, up to and including plaintiff's notice of appeal. In determining the respective liabilities among the partners, the trial court correctly considered eight partners—the plaintiff, the six defendants-appellees, and Wolfe.

After pleadings and a subsequent trial, the trial court, on September 29, 1986, determined that the partnership had been dissolved but not terminated, and appointed a receiver to account for the liabilities among the partners and to wind up the partnership. All parties objected to the appointment of a receiver. On November 24, 1986, the trial court overruled all objections to the appointment. On March 16, 1987, the receiver filed a report.

On April 8, 1987, plaintiff filed a motion "to reflect amended petition on the record, to amend the petition." The written motion sought to delete plaintiff's prayer for an accounting and to add a prayer for a declaration that the plaintiff was free from liability to the defendants as partners. On April 20, 1987, the trial court granted the motion and permitted an amendment to the petition to be filed, "effective as of August 21, 1986," the date trial began. We note that plaintiff's filed motion does not accurately reflect plaintiff's oral motion made during the trial itself, because the oral motion did not seek to delete plaintiff's prayer for an accounting. Although plaintiff stresses his withdrawal of his request for an accounting, we do not see any controlling issue in that regard. The relief sought by plaintiff required a balancing of the liabilities among the partners in any event.

On June 23, 1987, the trial court entered an order overruling renewed objections to the appointment of the receiver and objections to the receiver's report. In that order, the court entered judgment against plaintiff and in favor of the partnership in the amount of $9,286.96, "terminated" the partnership, and set over "the assets and further liabilities of the partnership" to the six defendants-appellees and Wolfe. The order further provided that any party could object to the receiver's computation within 10 days. On July 2, 1987, plaintiff filed a motion for a new trial and an objection to the receiver's computations. Plaintiff's objections were apparently not ruled on, but on October 1, 1987, plaintiff's motion for new trial was overruled.

The plaintiff appeals and in his brief assigns eight errors to the actions of the trial court. The plaintiff's assignments of error, as summarized, allege that the trial court erred (1) in overruling the plaintiff's demurrer to each of the individual counterclaims for the reason that such counterclaims failed to state a cause of action, and several causes of action were misjoined; (2) in failing to declare plaintiff free from any liability with respect to the partners and the partnership; (3) in providing an accounting; (4) in appointing a receiver and in charging plaintiff for a proportionate share of the receiver's bill; (5) in finding the evidence sufficient to support judgment against plaintiff for $9,286.96; and (6) in entering judgment in favor of the partnership, which did not request affirmative relief.

For the reasons set out below, we reverse and remand the cause for further proceedings.

The facts in the record before us show the following. The Southwood partnership was formed in 1980 by a group of 12 real estate agents who worked together selling residential real estate for Gateway Realty of North Platte, Inc. The partnership agreement stated a general purpose of buying and selling real estate, without reference to any particular undertaking or term of existence. The partnership agreement also provided that each partner would contribute an equal share of additional capital to the partnership as needed for its operation. Before the signing of the partnership agreement, the partners determined

that the partnership would purchase a particular tract of land. The partners planned to subdivide the land and to earn commissions on the sale of the lots and on the sale of the homes that were built on the lots. The partners purchased an 8.87-acre parcel of land, consisting of two tracts. The first tract was 2.5 acres, which included a house and some other buildings. The second tract was 6.37 acres of unimproved real estate. The purchase agreement shows that the parcel was purchased for $96,000, to be paid in the following manner: $1,000 down; $6,500 at closing; assumption of mortgage to First Federal Savings and Loan Association of North Platte (now American Charter), with a balance of $18,800; payment of the land contract balance of $12,712.31; and a note to the sellers for the balance of approximately $57,000. The note to the sellers was to be paid in semiannual installments of $600 with a balloon payment on or before July 1, 1985.

The 12 initial partners each put up $900, and the partners and partnership made a note of approximately $14,000 to the North Platte State Bank to pay off the balance due at closing. The partnership's debt was serviced from rental income from the property, from additional equal capital contributions, or from additional borrowed funds. At times the property was rented for $550 per month. In May of 1986, the 2.5-acre tract was sold for an amount not in evidence. As part of this sale, the remaining 6.37 acres were rented to the buyers for a term of 3 years beginning May 2, 1986, at $75 per month. As part of the same transaction, the partnership loaned the buyers $2,597.61 and took a mortgage on a different property apparently owned by the buyers. The buyers also had an option to buy the additional leased land.

In a letter dated February 23, 1984, the attorney for the partnership informed the partners that North Platte State Bank was making demand for the payment of a June 24, 1983, note, in the principal amount of $31,360.86, due December 21, 1983, and that the partnership was unable to obtain alternative financing. The letter requested that each partner contribute $4,024.55 plus interest.

In response to this bank demand, each of the defendants-appellees paid the bank his or her respective share

plus interest. After these six payments, the bank note principal as of April 30, 1984, was reduced to $7,840.20. Plaintiff and Wolfe did not pay. Plaintiff's response to the request for payment of his share of the bank debt was a letter to the partners dated April 7, 1984. The letter set out in part:

It is my decision at this date to terminate all of my partnership interests in the Southwood Partnership.

It is with much regret and lots of serious thought that I am taking this action. Since I am no longer an active wage earner and because of my age, these two things have been the determining factor in my decision.

In December of 1984, under threat of foreclosure, defendants-appellees each paid a share of the April 30, 1984, balance on the note which resulted from plaintiff's and Wolfe's failure to pay. Each payment was $1,306.70, plus interest based on the date each partner paid the bank. As of December 17, 1984, the bank note was paid in full.

In the interim, the attorney for the partnership told the plaintiff that he could not get out of the partnership unless he went into competition with Gateway or died. The attorney's statement, although far from an accurate characterization of the plaintiff's right to sever his relationship with the partnership, was an apparent reference to paragraph 9 of the partnership agreement. Paragraph 9 provided, in part, that if a partner left Gateway and "remain[ed] active in the sale of real estate," the partnership was required to purchase and the partner was required to sell his or her partnership interest at a price based upon the partner's share of the adjusted cost basis of the partnership's real estate. In letters dated April 11, 1984, the plaintiff resigned from Gateway Realty and stated that he was now in competition with Gateway. The plaintiff transferred his real estate license to another real estate company and maintained listings there.

Receiving no response from the partners or partnership, the plaintiff's attorney, in letters dated May 8 and 11, 1984, made an offer of retirement to the partnership and sent the partnership a check in the amount of $728, which the plaintiff believed was the negative balance of his partnership account, based on a partnership statement at the end of 1983. The

partnership did not accept the check and did not respond to the offer of retirement.

In addition to the payment of the bank note as described above, defendants-appellees each contributed an additional $6,500 to the partnership over the period from July 1984 to May 1986. These contributions apparently retired the remaining debt of the partnership to third parties, other than the tax liens and other assessments on the partnership property. Those amounts had not been paid at the time of trial.

In the plaintiff's first summarized assignment of error, he contends that the trial court erred in failing to sustain his demurrer to the counterclaims. Plaintiff argues that on the morning of the trial, the trial court informally overruled his demurrer and that plaintiff then answered the counterclaims by stating on the record a denial of all the allegations in the counterclaims, other than the identities of the parties. Plaintiff, in his brief, contends that he preserved his demurrer. Plaintiff acknowledges that the trial court's ruling on the demurrer and plaintiff's answer to the counterclaims are not set out in the record before us.

As the court stated in *Buckingham v. Wray*, 219 Neb. 807, 809, 366 N.W.2d 753, 756 (1985):

> In the absence of extraordinary circumstances, an appellate court will not consider or review a ruling of a trial court when the questioned ruling is not a part of the trial record. We will not speculate about proceedings in a trial court but must rely upon the record presented for review. [Citation omitted.]

If the plaintiff believed that the bill of exceptions contained prejudicial errors, he had the responsibility and the opportunity to amend the bill of exceptions. See Neb. Ct. R. of Prac. 5E (rev. 1989). We stated in *Campbell v. City of Ogallala*, 183 Neb. 238, 240, 159 N.W.2d 574, 576 (1968), "[T]he record of the trial tribunal in all appellate proceedings imports absolute verity. If such record is incomplete or incorrect, the remedy shall be by appropriate proceeding to secure correction thereof in the trial court."

Where there is no ruling on a demurrer in the record and there has been a trial on the merits, the demurrer will be

considered waived. *State ex rel. League of Municipalities v. Loup River P. P. Dist.*, 158 Neb. 160, 62 N.W.2d 682 (1954). Plaintiff's first assignment of error is without merit.

With reference to the second summarized assignment of error, the plaintiff contends the court erred in failing to adjudge plaintiff free of all liability to defendants-appellees and to the partnership. This assignment has no merit.

The plaintiff did not present the trial court with any possible basis for finding him free of liability to the partnership or to the individual partners upon final settlement. Under Neb. Rev. Stat. § 67-315(b) (Reissue 1986), the plaintiff was jointly liable for the debts of the partnership in this case. Absent any agreement among the partners and partnership creditors of the types specified in Neb. Rev. Stat. § 67-336 (Reissue 1986), the plaintiff's liability was unaffected by the dissolution. There was no such agreement in this case. The evidence at trial indicated that the partnership was insolvent and that the plaintiff will be liable for contribution upon final settlement. The plaintiff's assignment of error in this regard is without merit.

With further regard to plaintiff's second summarized assignment of error, it appears that plaintiff contends the trial court erred in not finding that plaintiff terminated his interest under paragraph 9 of the partnership agreement. Paragraph 9 provides generally for the purchase of the interest of a partner by the remaining partners in the event of death or severance of employment with Gateway. It provided two potential methods of termination of a partner's interest upon severance from Gateway. Paragraph 9(a) provided, in part, that in the event a partner ceased "to actually sell real estate in Lincoln County, Nebraska, said partner may offer to sell said real estate back to the partnership," using the provisions of the agreement applicable in the event of death to determine the value of such interest and provide for settlement of such interest. The record before us does not contain any evidence that plaintiff offered to sell the real estate back to the partnership under the formula referred to in paragraph 9(a).

We also find that plaintiff did not terminate his interest under paragraph 9(b) of the agreement, which provides that the partnership must purchase a partner's partnership property

"[i]n the event the terminating partner shall remain in Lincoln County, Nebraska, and remain active in the sale of real estate . . . ." The trial court found generally that plaintiff's actions did not trigger any specific form of termination under the partnership agreement, but that plaintiff's actions dissolved the partnership under the Uniform Partnership Act. We agree with those findings and, in our de novo review, find that the plaintiff did not remain active in the sale of real estate as contemplated in the partnership agreement, and thus plaintiff did not satisfy the conditions of paragraph 9(b) of the agreement. The trial court was correct in not applying paragraph 9(a) or 9(b) to any purported termination by plaintiff. Plaintiff's contentions to the contrary in this regard are without merit.

The third summarized assignment of error is directed at the propriety of the accounting in the trial court. Plaintiff's apparent contention is that the trial court should not have provided an accounting because the plaintiff had deleted his prayer for an accounting and the defendants-appellees' counterclaims were impermissible actions at law and not requests for an accounting. Even if plaintiff's late amendment was proper, it did not change the nature of his action. After the amendment the petition still requested relief which required an accounting of liabilities among the parties.

With respect to defendants-appellees' counterclaims, actions at law between partners are generally not allowed, in order to avoid piecemeal litigation. In *Younglove v. Liebhardt*, 13 Neb. 557, 14 N.W. 526 (1882), we held an action by a partner against a partner for work and labor performed for the partnership could not be maintained. However, in reversing the judgment in favor of the plaintiff partner in the *Younglove* case, we remanded the cause with leave to the plaintiff "to amend his petition and ask for an accounting." *Id.* at 558, 14 N.W. at 527.

In this case, the counterclaims were in conjunction with plaintiff's petition, which indicated that the partnership was dissolved and which initially requested an accounting. All parties requested relief in the nature of an accounting and such relief as the court deemed equitable. The following circumstances support the trial court's decision to provide for an accounting and to order the winding up of the partnership:

(1) The partnership was dissolved by the plaintiff's letter of termination; (2) prior to dissolution, the plaintiff failed to meet his obligation under the partnership agreement to contribute capital on an equal basis as needed for the operation of the partnership; (3) the defendant partners contributed capital beyond the amount required under the partnership agreement to prevent foreclosure on partnership assets; (4) there was evidence that the partnership was insolvent; (5) defendants-appellees refused to acknowledge dissolution and failed to account to the plaintiff; and (6) the partnership agreement did not provide otherwise. The accounting and final winding up were necessary to provide both the plaintiff and the defendants-appellees the relief they sought. The trial court did not err in providing an accounting and ordering the winding up of the partnership. Plaintiff's third assignment of error is without merit.

Plaintiff's fourth summarized assignment of error concerns the receiver appointed by the trial court. The appointment of a receiver may be treated as a final order. Neb. Rev. Stat. § 25-1090 (Reissue 1985). The plaintiff chose not to appeal within 30 days after the receiver was appointed. See Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 1988). Since the cause must be remanded in any event, the plaintiff's assignment of error in this regard will not be addressed. The costs of the receiver will be shared equally by each of the eight partners remaining at the time of trial. Whether a receiver may be appointed on remand remains an issue to be determined at that time.

The fifth summarized assignment of error relates to the trial court's finding, based upon the receiver's report, that the plaintiff is indebted to the partnership in the amount of $9,286.96. It may well be that the court's order achieved rough justice among the parties to this lawsuit, but on presentation of the precise issue it becomes apparent that the accounting was not properly done and the amount of the judgment was not properly calculated according to statutory principles. We agree with the plaintiff that the judgment of the trial court is not supported by the evidence.

The receiver's report stated that the assets of the partnership included a checking account with a balance of $1,614.02 as of

March 13, 1987; a promissory note to the partnership with a principal balance of $1,506.36 as of March 16, 1987 (with $50 due per month); and 6.37 acres of real estate subject to a 3-year lease that began on May 2, 1986, with rent of $75 per month and subject to an option. The real property is subject to an unspecified amount of taxes and assessments. The receiver's report contained an unsubstantiated statement that the value of the real estate "may not [sic] be exceeded by the taxes and assessments against it."

The receiver's report also stated that the sole remaining liability of the partnership, apparently other than unpaid taxes and assessments against partnership property, was a debt of $253.55 owed to a former partner, to be paid in installments of $6.23 each month.

The receiver's report went on to find that the six defendants-appellees had contributed a total of $74,295.67 to the partnership between December 1983 and May 1986, the time period during which the plaintiff refused to contribute. The receiver divided that amount by 8, the number of partners in the partnership during that period, to determine the plaintiff's share of $9,286.96.

The rules for determining accounts among partners after dissolution are found in Neb. Rev. Stat. § 67-340 (Reissue 1986). The receiver's report in this case failed to account for the assets of the partnership as required by § 67-340(a)(I) and (c). The plaintiff was entitled under § 67-340(c) to have the assets of the partnership applied against the liabilities of the partnership before calculating his share of additional contribution. In determining plaintiff's contribution, the trial court failed to account for the $1,614.02 in the checking account; a note owing to the partnership for the amount of $1,506.36; and the value, if any, of the 6.37 acres of real estate owned by the partnership. Such matters must be corrected on a proper windup of the partnership.

Although the plaintiff did not argue any issue in this respect, the accounting approved by the trial court also failed to consider the nature and propriety of partnership expenditures subsequent to the dissolution and whether contributions by the partners were loans to the partnership, bearing interest under

Neb. Rev. Stat. § 67-318(c) (Reissue 1986), or whether the contributions were capital in nature. Loans by the partners to the partnership are accounted for under § 67-340(b)(II), and capital contributions are accounted for under § 67-340(b)(III). The fifth assignment of error has merit and is a further basis for remand as stated above.

In connection with the plaintiff's sixth summarized assignment of error, any judgment based upon the accounting should be in favor of the defendants-appellees on their counterclaims and not in favor of the partnership. In remanding the cause, we note that this partnership was dissolved April 7, 1984, and its affairs have not been properly wound up and the partnership has not been properly terminated. The cause is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.