VELMA DICKIE, APPELLEE, V.
FLAMME BROTHERS, INC., APPELLANT.
560 N.W.2d 762

Filed March 7, 1997.    No. S-95-281.

Richard Register for appellant.

James A. Gallant, receiver.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

Flamme Brothers, Inc., the appellant, is a Nebraska corporation which was incorporated on October 1, 1979. All of the common stock is owned by Velma Dickie, the appellee; her two sons, Vernon Flamme and Donald Flamme; Vernon Flamme's wife, Sharon; and Donald Flamme's wife, Veronica. On September 19, 1986, Dickie filed a petition in district court for an involuntary dissolution of the corporation. Dickie alleged as a basis for dissolution that the directors were deadlocked in the management of corporate affairs and that the shareholders were unable to break the deadlock. At that time, Vernon Flamme was serving as president of the corporation.

Donald and Veronica Flamme, intending to resist Dickie's claims, filed a motion for leave to intervene on October 26, 1986. The court granted their motion on November 3 and ordered them to file a petition in intervention within 14 days. Pursuant to their answer, Donald and Veronica Flamme denied that the directors were deadlocked in the management of corporate affairs. In addition, they raised two affirmative defenses: (1) There was no true majority or controlling ownership in the corporation, and (2) Dickie failed to state a cause of action against the corporation.

In March 1987, Donald and Veronica Flamme filed a counterclaim stating, in part, that since Dickie, Vernon, and Sharon Flamme had proceeded with liquidation, Donald and Veronica Flamme believed it would be in the best interests of the corporation for the court or a receiver to carry out the liquidation proceedings. Donald and Veronica Flamme requested that (1) the involuntary dissolution be set for trial, (2) the court appoint a receiver, (3) all activities be subject to an accounting, (4) any acts of unauthorized persons be set aside, and (5) the court preserve corporate assets.

In the spring of 1987, the corporation liquidated a substantial amount of farming equipment and real property. Proceeds were

held by Fremont National Bank, which was designated as trustee for Platte Valley Bank and Flamme Brothers.

At a pretrial conference held on September 1, 1987, the case was generally discussed, and the court stated that it would appoint James A. Gallant as receiver. The court ordered that "[t]he Receiver shall conduct an inventory, and initial report and a plan for liquidation of the assets within 30 days of appointment." Gallant was appointed as receiver on September 22.

As of September 1987, obligations were owed by the corporation to Platte Valley Bank, the Federal Land Bank, and the Farmers Home Administration (FmHA). On October 9, receiver entered into three settlement agreements in an attempt to satisfy these significant outstanding corporate debts. The first agreement was entered into by Wolf Insurance Agency and the corporation. The corporation was indebted to Wolf Insurance Agency in the sum of $24,777.62, with interest accruing at a rate of 12 percent per annum from March 17, 1987. The parties agreed that the corporation would be released from all debt owed to Wolf Insurance Agency for the sum of $10,593.45, which had been deposited into a trust account with Fremont National Bank.

The second agreement was entered into by Platte Valley Bank; the corporation; Ames Elevator, Inc.; and Vernon and Sharon Flamme. The agreement, in part, addressed the manner in which the corporation would satisfy its debt to Platte Valley Bank. The debt totaled $698,600. A portion of said debt, $400,000, had been guaranteed by FmHA. Pursuant to the agreement, the proceeds from sales conducted in the spring of 1987 and held by Fremont National Bank were to be paid to Platte Valley Bank. In addition, the corporation was to pay a total of $78,500. Also, Platte Valley Bank would be entitled to collateral currently owned by the corporation and listed in exhibits incorporated into the contract. Finally, the contract recognized that five center pivot irrigation systems, which constituted collateral for the loan guaranteed by FmHA, were to be sold with the real property mortgaged by the Federal Land Bank and owned by the corporation. Platte Valley Bank would be entitled to the portion allocated to the pivots. Such portion

would have to be acceptable to the FmHA and based on appraisals from qualified expert appraisers.

Pursuant to the agreement, Platte Valley Bank agreed to engage in the process generally known as "PIK and Roll." According to such arrangement, Platte Valley Bank would extend an ongoing line of credit in favor of the corporation for any sum up to $30,000 to be used to purchase PIK certificates. Platte Valley Bank would be repaid upon the retirement of the PIK certificates and the sale of 1986 grain.

The third agreement was entered into by Ames Elevator, Donald and Veronica Flamme, Vernon and Sharon Flamme, Dickie, and receiver. Pursuant to this agreement, the four Flammes and receiver agreed in part (1) that they would enter into an agreement with the FmHA that would allow all assets secured to the FmHA to be sold by receiver; (2) that they would concur as to the value to be placed on each parcel of real property; (3) that the decision of receiver agreed upon with the Federal Land Bank and FmHA would be binding upon the Flammes; (4) that the corporate and jointly owned farm ground would be placed as soon as possible on an open listing basis; (5) that any private parties that had an interest in the parcels would be excepted from the open listing agreement; (6) that attorney fees and accounting fees necessary to wind up the affairs of the corporation would be paid from the remaining assets of the corporation upon liquidation (as security for said fees, the parties were granted a lien against the land legally described as the east half of the southeast quarter of Section 8, Township 18, Range 6 in Dodge County, Nebraska, and part of the east half of the northeast quarter, Section 7, Township 18, Range 6 in Dodge County, Nebraska); (7) that Donald and Vernon Flamme would be paid by the corporation the sum of $8,000 for unpaid land rental from 1986; and (8) that Vernon and Sharon Flamme would be paid by the corporation the sum of $5,250 for unpaid salary through March 31, 1987.

Receiver filed a motion for approval of the first and second settlement agreements on November 2, 1987. Said agreements were approved by the court on that same day. Receiver filed an additional motion for approval of the third agreement on November 16. Said agreement was approved by the court that same day.

In April 1988, receiver filed a motion for approval of sale of irrigation equipment and pipe to Vernon Flamme. Such sale was conditioned upon the approval of the FmHA and Platte Valley Bank. The sale was approved by the court on April 18.

As of September 1987, the corporation owned several tracts of land: (1) part of the east half of the northeast quarter of Section 17, Township 18 North, Range 6 East of the 6th P.M., in Dodge County, Nebraska; (2) the east half of the southeast quarter of Section 8, Township 18 North, Range 6 East of the 6th P.M., in Dodge County, Nebraska; (3) the north 16 acres of the west half of the northwest quarter of Section 16, Township 18 North, Range 6 East of the 6th P.M., in Dodge County, Nebraska (lying north of east-west road); (4) the east half of the southwest quarter of Section 8, Township 18 North, Range 6 East of the 6th P.M., in Dodge County, Nebraska; the east half of the northwest quarter of Section 17, Township 18 North, Range 6 East of the 6th P.M., in Dodge County, Nebraska (except 5.61 acres on east side); the north three-quarters of the west half of the southeast quarter of Section 8, Township 18 North, Range 6 East of the 6th P.M., in Dodge County, Nebraska; and the northwest quarter of Section 9, Township 18, Range 6 East of the 6th P.M., in Dodge County, Nebraska. These parcels of property, as well as two parcels jointly owned by Vernon and Donald Flamme, and equipment located on all parcels, were sold to the North Bend Land Company on November 25, 1987. A report of sale of land was filed by receiver on May 18, 1988. The court approved receiver's report.

In October 1991, receiver moved the court for an order to dispose of remaining miscellaneous personal property of the corporation. At the hearing for said motion, receiver testified that the items consisted of a rusted irrigation pivot, a 12-row tool bar, a dock, a tank, and a 471 Detroit motor. According to receiver, such property had only salvage value. The court agreed and ordered receiver to contact a used equipment or junk dealer.

On November 25, 1991, receiver filed his final report, which alleged that he followed the liquidation plan set out in the settlement agreements, the secured assets were disposed of and moneys distributed, the real property was sold with the approval of the district court, and all grain on loan was delivered to the

U.S. Department of Agriculture. Receiver also provided a list of receipts, disbursements, and remaining debts. Donald Flamme filed an "Objection for Final Report of Receiver" on November 26. The district court approved the final report on December 17. Donald Flamme filed a motion for new trial on December 18. The motion was overruled. Donald Flamme timely appealed.

On June 3, 1994, the Nebraska Supreme Court reversed the judgment and remanded the cause for further proceedings. See *Dickie v. Flamme Bros.*, 246 Neb. 66, 516 N.W.2d 618 (1994). According to the Supreme Court, the district court was to require receiver to submit a verified inventory within 30 days listing all property owned by the corporation as of the date of receiver's appointment, together with the value of the assets listed, and a statement of all mortgages and security interests in the items of property. The district court was also instructed to require receiver to file an amended final report identifying the source of money received, the property for which the money was paid, and the reason for the payments made. Subsequent to the filing of the amended final report, the district court was to conduct a hearing to determine if the report should be approved.

Receiver filed an inventory and a final report on July 25, 1994. On August 15, Donald Flamme again objected to the inventory and final report. Receiver amended the inventory and final report on September 1.

The district court entered an order on February 28, 1995, approving the amended final report and dissolving the corporation. A motion for new trial was filed shortly thereafter, but was denied on March 14. A notice of appeal was timely filed on March 15.

Flamme Brothers contends that the district court erred by (1) accepting receiver's amended inventory, which did not account for all of the property owned by and obligations of the corporation, specifically identified as farm-stored grain, PIK certificates, personal property, insurance proceeds for grain, rights of actions for recovery of fraudulently conveyed property, rights of actions for failure by officers to pay employment taxes and properly handle grain, secured debts, and unsecured debts; (2) failing to require receiver to timely proceed on or abandon known rights of actions arising from missing, fraudulently con-

veyed property and arising from improper actions of corporate officers; (3) failing to set aside the confirmation and sale of real estate owned by the corporation; (4) failing to hold receiver responsible for failure to marshal the assets; and (5) accepting receiver's amended final report, which allowed the sale of personal property by persons other than receiver, did not specifically set forth the explanations for the transactions conducted by receiver and his "de facto agents" (identified as "secured creditors and Vernon Flamme"), and failed to explain the decrease in the corporation's net worth.

In an appeal from an equitable action, the reviewing court reviews the action de novo on the record and reaches a conclusion independent of the factual findings of the lower court. However, where credible evidence is in conflict on a material issue of fact, the reviewing court considers and may give weight to the circumstance that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Moulton v. Board of Zoning Appeals, ante* p. 95, 555 N.W.2d 39 (1996).

A receiver is an officer of the court and, thus, is subject to the control and powers specifically granted by the court and authorized by statute. See, Neb. Rev. Stat. § 21-2097 (Reissue 1991); *Lewis v. Gallemore*, 175 Neb. 279, 121 N.W.2d 388 (1963). Obedience to the order and direction of the court assures the receiver that he will not be held personally liable. *Wells v. Farmers State Bank of Overton*, 124 Neb. 386, 246 N.W. 714 (1933).

Once appointed, a receiver becomes entitled to the custody and control of a debtor's property. *Brooks, Receiver, v. Wooten-Epes Co.*, 202 Ark. 204, 149 S.W.2d 553 (1941); *Gottwals v. Manske*, 60 Nev. 76, 99 P.2d 645 (1940). A receiver is generally obliged to preserve and protect such property for the benefit of all parties. Such a duty requires that the receiver proceed with the same care and diligence that an ordinary prudent person would use in caring for and handling property under like circumstances. *Vander Vorste v. N'western Nat. Bank*, 81 S.D. 566, 138 N.W.2d 411 (1965); *Morris v. Pierce*, 188 Okla. 396, 110 P.2d 294 (1940); *Taylor v. Santa Fe Northwestern Ry. Co.*, 38 N.M. 457, 34 P.2d 1102 (1934). Only when the receiver fails to

abide by such a standard will he be held responsible for the consequences of his actions as an officer of the court. *Vander Vorste, supra*; *City of St. Louis v. Goldenberg*, 529 S.W.2d 33 (Mo. App. 1975).

A receiver is required to perform numerous tasks in satisfying his duty of due care. He is to collect, sell, distribute, and dispose of corporate assets. See, § 21-2097; *Dobler v. Bawden*, 238 Iowa 76, 25 N.W.2d 866 (1947). Inherent in the task of monitoring the corporate estate is the bringing and defending of pertinent lawsuits. See § 21-2097. In addition, the receiver is responsible for taking an inventory of the corporation's assets and liabilities. *Gough v. State Realty Co.*, 210 La. 1055, 29 So. 2d 60 (1946). The inventory should list all real and personal property owned by the corporation as of the date of the receiver's appointment, the value of the assets listed, and a statement of all mortgages and security interests in the items of property. *Dickie v. Flamme Bros.*, 246 Neb. 66, 516 N.W.2d 618 (1994). The receiver is also obligated to file a final report. The final report must identify the source of money received, the property for which the money was paid, and the reason for the payments made. The final report should allow a reviewing court to readily understand what has occurred in connection with the corporation's property up to the date of the filing of the report. *Id.*

After conducting a thorough review of the extensive record involved in the instant case, we find that the amended inventory and amended final report inadequately disclose the entire holdings of Flamme Brothers and the procedures followed by receiver. The foregoing assets and liabilities must be specifically accounted for by receiver within 30 days, as ordered by the district court. The district court shall then conduct a hearing, after notice, to determine if the inventory and final report should be approved. Failure to include such necessary information, or failure to provide an adequate explanation for the absence of a requested entry, will require the district court to surcharge receiver for damages the corporation has incurred while he served as receiver.

There is ample evidence in the record to demonstrate that the corporation purchased a John Deere combine, serial No.

564144, in April 1983. As of 1987, the corporation still owed approximately $36,000 of the purchase price. Donald Flamme testified that the combine dealer, RLD, Inc., repossessed the combine and that Vernon Flamme bought the combine from the dealer on the same day Gallant was appointed receiver. It is not entirely clear whether such an asset was necessarily owned by the corporation as of the date of receiver's appointment. What is clear, however, is that receiver never investigated the status of the combine once it was brought to his attention by Donald Flamme.

Donald Flamme testified that the corporation had owned a significant amount of equipment, which was used on property not owned by the corporation. Thus, the corporation was entitled to rent for the use of such equipment. Rent accruing from the time receiver was appointed was never collected and accounted for as a corporate asset.

Receiver, in his inventory, notes that approximately 20,000 bushels of corn owned by the corporation and stored in flat storage had been mismeasured by the Agricultural Stabilization and Conservation Service (ASCS). Receiver fails, however, to account for additional grain that was allegedly destroyed, moved, or stolen after his appointment. Veronica Flamme testified that grain stored in the corporation's "Columbian" bin, which had not been properly fumigated, was destroyed by bugs. In addition, the corporation was assessed for the unauthorized disposition of corn and soybeans. Evidence of this missing grain was not accounted for in the inventory.

With regard to the issue of PIK certificates, receiver stated in his deposition that he was never in possession of such certificates. Veronica Flamme, however, testified that she had discovered that PIK certificates owned by the corporation had been signed and used by receiver to pay off grain loans. It appears that the corporation may have owned a significant number of PIK certificates at the time of receiver's appointment. However, this asset, and the value of this asset, is not accounted for in the inventory.

As of the date of receiver's appointment, Internal Revenue Service and ASCS assessments were made against the corporation. The inventory and final report fail to indicate whether

receiver discovered responsible parties and determined the validity of such claims. The record demonstrates that receiver also failed to investigate whether missing grain, the subject of ASCS assessments, had been insured, even at the urging of Donald Flamme.

In the spring of 1987, corporate land and equipment were sold, and proceeds from the sales were placed in trust at Fremont National Bank. Proceeds totaling $435,124.89 were paid out on October 13, 1987, but were never accounted for in the inventory, nor was disbursement of those proceeds explained in the final report.

Donald Flamme testified that the corporation owned a Voltse pump. Although Donald Flamme informed receiver of this item, it was never included in the inventory. Receiver also failed to account for a 3,000 bushel grain bin and a Sunflower plow which Donald Flamme alleged were corporate assets.

Receiver lists in the inventory "miscellaneous property of junk value." However, he neglects to list specifically what property that entry includes.

Finally, receiver's inventory neglects to list each of the corporate creditors, the status of each creditor, and the specific assets in which secured creditors had an interest. The settlement agreement and exhibits to the settlement agreement list numerous secured assets which are never accounted for by receiver.

The court understands that a significant number of assets were distributed pursuant to the agreements entered into on October 9, 1987. Curiously, however, the property distributed (specifically, the escrow account, collateral secured by creditors, PIK certificates, and the irrigation system) has not been listed on the inventory, nor has its distribution been explained in the final report.

This case is quite troublesome for the reason that receiver, in many respects, appears to have neglected to satisfy his duties and responsibilities. Throughout the record there are numerous instances where receiver did not investigate the assets of the corporation. For instance, the following conversation transpired between Richard Register, attorney for Flamme Brothers, and receiver during receiver's deposition:

Q. [Register] All right. So base — but did you ever take a listing and say there is [sic] this many pipes, this many center pivots, this many pumps on each particular land?

A. [Receiver] I did not do that, no, because all of that was secured by the Platte Valley Bank and I basically used the exhibit from the settlement agreement . . . .

. . . .

Q. Okay. Who represented to you that — that they had a lien on every one of the pipes? Who was that?

A. Mr. Wieser from the Platte Valley Bank and from the checking that I had done, I mean I can't go out there and count each piece of pipe.

Receiver also testified as follows:

Q. [Register] Okay. And this grain had been moved and was no longer where it was supposed to be; in fact it was no longer anywhere, wasn't it?

. . . .

Q. . . . . I am talking about the 60,000 in overdisbursements in which there was no grain in the bins.

A. [Receiver] Ah, I don't know what you are talking about.

Q. Did you even ask him about them? Did you even ask —

A. There were penalties assessed.

Q. And did they seize the personal assets of Vern and Donald Flamme to cover these overdisbursements?

A. How would I know.

Q. Well, isn't it your job to know whether the corporate debts are being paid for by seized assets of persons?

A. No.

Q. You don't think that's your job?

A. No.

We disagree with receiver's conclusion that he is not responsible for inventorying secured property, and we do not applaud his failure to properly protect the assets of the corporation.

Examination of the record in the instant case demonstrates that the inventories and final reports submitted and approved by the district court are incomplete. Therefore, we again remand this cause to the district court for further proceedings. The court

shall conduct a hearing after notice to determine if the amended inventory and amended final report comply with this decision. Only when the amended inventory and amended final report sufficiently address every discrepancy set out in this opinion will receiver's bond be exonerated and Flamme Brothers be dissolved.

Flamme Brothers requests that this court order that a new receiver be appointed to distribute the assets of the corporate estate. We are not able to address such a request.

An appointment of a receiver is considered by this court to constitute a final order. *Robertson v. Southwood*, 233 Neb. 685, 447 N.W.2d 616 (1989). In the instant case, receiver was appointed on September 22, 1987. Although Flamme Brothers would have had the opportunity to appeal such appointment within 30 days, an appeal was not filed. Therefore, we are unable to address such an error.

Flamme Brothers also requests that this court determine whether the sale of corporate real estate was proper. Again, we are unable to make such a determination. As appointments of a receiver constitute a final order, so do confirmations of a sale by a receiver constitute a final order. See *Lewis v. Gallemore*, 173 Neb. 441, 113 N.W.2d 595 (1962).

On May 17, 1988, the district court approved receiver's sale of corporate real property. Flamme Brothers failed to appeal within 30 days of that confirmation. Therefore, we are unable to address any errors regarding the sale of real property.

REVERSED AND REMANDED.