Graham. Consequently, we conclude that there was insufficient evidence to rebut the presumption that the guidelines should be applied. Therefore, the district court abused its discretion when it entered a child support order that deviated from the child support guidelines without good cause.

Based on the child support worksheet completed by the district court, Mindi should have been required to pay $626 per month. We therefore modify the decree to award Christian $626 per month in child support. The trial court entered its decree on July 19, 2013. If the trial court had ordered child support to be paid as required by the guidelines, the first installment would have been due on August 1. The decree as modified by this opinion shall operate accordingly. See *Pursley v. Pursley*, 261 Neb. 478, 623 N.W.2d 651 (2001).

## CONCLUSION

We find that the district court did not abuse its discretion in allowing the Lincoln County action to proceed, awarding custody of Graham to Christian, or dividing the costs of the action equally between the parties. However, the cohabitation restriction is impermissible, and we therefore remove it from the parenting plan. Likewise, it was an abuse of discretion for the district court to deviate from the child support guidelines without good cause. Accordingly, we modify the decree to order Mindi to pay $626 per month in child support in accordance with the child support guidelines.

Affirmed as modified.

———————————

Rita A. Sutton and Kai Carlson, appellees, v.
Helen Killham et al., appellants.

___ N.W.2d ___

Filed August 19, 2014.    No. A-13-635.

1.  **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's decision.

2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.

3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

4. **Final Orders: Appeal and Error.** Generally, only final orders are appealable.

5. ____: ____. Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.

6. **Final Orders: Words and Phrases.** A substantial right under Neb. Rev. Stat. § 25-1902 (Reissue 2008) is an essential legal right.

7. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

8. **Final Orders.** An order that completely disposes of the subject matter of the litigation in an action or proceeding both is final and affects a substantial right because it conclusively determines a claim or defense.

9. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

10. **Trial: Evidence: Appeal and Error.** To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded.

11. **Evidence: Appeal and Error.** Evidence objected to which is substantially similar to evidence admitted without objection results in no prejudicial error.

12. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

13. **Equity.** Equity strives to do justice. Equity is not a rigid concept but, instead, is determined on a case-by-case basis according to concepts of justice and fairness.

14. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the party's brief.

Appeal from the District Court for Cheyenne County: Leo Dobrovolny, Judge. Affirmed.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellants.

Thomas D. Oliver for appellees.

Moore, Pirtle, and Riedmann, Judges.

Moore, Judge.

## INTRODUCTION

Helen Killham and the other defendants in this case (collectively the Appellants) appeal from an order of the district court for Cheyenne County, which directed the referee to sell the remaining interests of the parties in certain oil wells and removed the condition that the wells be placed into production before sale. Because we find no error in the district court's decision, we affirm.

## BACKGROUND

This case, which originated as a dispute among the six sibling beneficiaries of a trust created by their parents, has been ongoing for well over 10 years and has resulted in numerous court orders and four previous appeals. The first two appeals were dismissed for lack of jurisdiction, on August 30, 2005, in case No. A-05-847 and on March 3, 2008, in case No. A-07-1133. An exhaustive summary of the background of the case can be found in *Sutton v. Killham*, 19 Neb. App. 842, 820 N.W.2d 292 (2012) (*Sutton III*), *affirmed* 285 Neb. 1, 825 N.W.2d 188 (2013). For purposes of the present appeal, we do not recite the full procedural background of the case here, but set forth only those facts necessary to resolve the issues before us.

In 2003, the district court created a receivership pursuant to Neb. Rev. Stat. § 25-1081 (Reissue 1995) and appointed a receiver. The receiver and successor receiver managed an oil well or wells (the wells), pending resolution of ownership issues related to the wells. The issues raised by the siblings in the underlying action were apparently resolved through mediation or court order, but the oil wells which are assets subject to the receivership have not been disposed of. In May 2006, upon the Appellants' request, the court appointed a referee. The referee filed a report with the court in December, stating his opinion that the property should be sold and the proceeds divided. He then described the property and owners

more specifically and set forth a proposed procedure for the marketing and sale of the property, "[p]roviding the [c]ourt enters an order confirming th[e] report and directing sale of the property."

In January 2007, an intervenor in the action filed a claim with the receiver for payment of operating expenses of an oil well, which claim was denied by the receiver. Thereafter, the receiver filed a motion for summary judgment which the district court sustained, thus approving the denial of the intervenor's claim. *Sutton III* is the appeal by the intervenor of the grant of summary judgment in favor of the receiver, under which appeal we affirmed the grant of summary judgment. That decision was likewise affirmed by the Nebraska Supreme Court on further review. *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013) (*Sutton IV*).

In August 2007, the district court ordered a partition sale of the working interest in the wells and personal property identified in the referee's report to the court and directed the referee to proceed with the sale, which was to be conducted in accordance with the procedure outlined in the referee's report. In December 2010, the district court (in the same order which granted the summary judgment to the receiver referenced above) ordered the receiver to become the operator of the wells and to "prepare for and commence oil production, expending whatever necessary funds are available to establish production again." The court ordered the referee to proceed with the sale as previously ordered after the receiver was producing oil.

The record reflects that during the pendency of the appeal addressed in *Sutton III* and *Sutton IV*, the receiver has apparently been denied permission by the director of the Nebraska Oil and Gas Conservation Commission (NOGCC) to reopen and operate the wells. In a May 20, 2011, journal entry made following a hearing on a motion for directives, the district court ruled on requests by the receiver, including whether the receiver should continue with efforts to bring the wells into production and whether the referee should continue to market the operating interests in the wells. The court ordered the receiver to comply with all requirements of law to bring

the wells into production. Because of the pending appeal, the court found, "[A] sale at this time may not achieve the optimal sales price, as buyers may not want to put forth their best offer while matters concerning the wells are being litigated." The court authorized, but did not order, the referee to postpone sale until the appeal was resolved. Following a status hearing on November 21, the court directed the receiver to make an assessment of what actions and expenses would be required to achieve production and to advise the parties of his findings before taking further action.

The receiver filed a motion for directives, which was heard by the district court on January 25, 2012. The receiver offered and the court received into evidence exhibits, including a copy of the oil and gas lease and certain correspondence between the receiver and the director of the NOGCC. The exhibits show that in 2008, in connection with efforts to change the operator of the wells, the receiver had correspondence from the director informing him that the oil and gas lease might no longer be valid and that the possibility existed that an application for a "force pooling" would have to be heard by the NOGCC. At such a hearing, the NOGCC would name the operator of the wells in its official order. In a letter dated December 23, 2011, the director informed the receiver as follows:

> [I]t is our opinion that the oil and gas lease, under which the continuous operations were formerly conducted, terminated due to non-production and is no longer valid. Given the fact that a large portion of the mineral real estate has been severed from the surface real estate, we have a number of entities now involved. Part of our statutory charge includes the protection of the correlative rights of all owners. Before [the NOGCC] executes any new [f]orm . . . to authorize the sale of oil and gas, we will require that you provide us with copies of the oil and gas leases and the new division order title opinion.
>
> In the event that new oil and gas leases are unable to be obtained, [the NOGCC] has the authority to force-pool unleased mineral interest owners under [Neb. Rev. Stat. §] 57-909. Since there would not be an operating agreement in such a situation, [the NOGCC] could also set

the terms and conditions pertaining to unpaid balances and operating expenses. If you feel that this legal action might be useful in this situation, you may certainly visit with us concerning pooling in this particular case.

In a May 9, 2012, journal entry, entered following the issuance of our opinion in *Sutton III* but prior to the petition for further review that led to the Nebraska Supreme Court's decision in *Sutton IV*, the district court ruled on the receiver's request for directives. The court noted the substance of the director's December 2011 letter to the receiver.

The court then recognized that this court's opinion in *Sutton III* had no effect on the directions requested by the receiver and that the August 2007 order directing sale of the working interests in the wells and the December 2010 order directing sale after production was achieved were still valid orders. The court directed the receiver to attempt to satisfy the NOGCC's requirements for issuing a permit to operate the wells and to determine if a factual basis existed to administratively challenge the NOGCC's findings with regard to the lease at issue.

The receiver submitted a report, dated June 26, 2012, in response to the court's May 2012 order. In the report, the receiver detailed some of the early history of his pumping efforts when he was first appointed in April 2007. According to the receiver, he repeatedly requested local operators and pumpers to assist him in restarting the wells, but these contacts declined to assist him due to the ongoing litigation. The receiver applied to the NOGCC on at least three occasions to become the operator when it became clear that no operator "with knowledge" would consider helping him. He reported that the last time he applied to operate the wells, the NOGCC rejected his application and informed him the lease was void due to a period of nonproduction lasting more than 90 days. The receiver reported that he met with the director of the NOGCC and the director's deputy on June 21, 2012. According to the receiver, the director believed that the oil and gas lease was void due to a period of nonproduction lasting more than 90 days and that it would be inappropriate for the receiver to operate the wells under such a lease. The

receiver disagreed with the director's opinion that the lease was invalid, noting that the 90-day clause in the lease applied only to a well that has been abandoned, and expressed his opinion that neither well had been abandoned. The receiver also reported that the director had informed him of steps that any of the mineral interest holders in the wells could take in the event the lease was invalid, including efforts to have the other mineral interest holders sign a new lease or file a "pooling application" with the NOGCC. The receiver noted that the legal title to the minerals held by certain parties needed to be clarified. The receiver recommended that the referee take immediate steps to conduct a sale of the oil well equipment, the mineral interests of the parties, and the current oil and gas lease, regardless of the validity of the lease. He then laid out a suggested course of action to accomplish a sale without returning the wells to production. The receiver noted that some of the parties involved in the lawsuit wanted him to file a declaratory judgment or mandamus action to enforce the current lease, while other parties felt that the lease was void. The receiver opined that if he filed such an action, he would have to join all of the parties to the present action as well as multiple additional mineral interest holders and the NOGCC. He felt that such an action, with any likely subsequent appeals, would result in an additional 2 to 3 years during which the oil wells will continue not to operate and would require the present litigation to remain open until the partition sale took place and was approved by the court and final distributions were made. Given the time and resources that would be consumed in attempting to obtain a new lease or "force pooling" interests or in filing a declaratory judgment or mandamus action, the receiver felt that the best option was to proceed with the recommended sale.

On March 26, 2013, after spreading the mandate following *Sutton IV*, the district court heard several requests of the parties, including a motion to direct action by the receiver and the referee filed by the Appellants and an objection by the appellees to efforts by the receiver to restore production. The appellees called the receiver as a witness. He testified about his contact with the NOGCC, some of which had to do with

the steps he needed to take to become the operator of the wells. The receiver testified that there had been no production since 2007 because the NOGCC would not allow an operator. The receiver testified that since being appointed receiver in 2007, he had made multiple attempts to get the oil wells in production, all of which had been rejected by the NOGCC. He clarified that the rejections had come from the director and that he had not filed a request for or appeared for a hearing in front of the NOGCC. The receiver testified to his belief that under NOGCC policy, the director makes decisions with respect to who is allowed as an oil well operator. He testified further that he had never appealed any of the director's decisions to the NOGCC. The receiver testified that his options at that point to get the wells in production would require him either to request a hearing before the NOGCC, which might lead to further litigation under the Administrative Procedure Act if the NOGCC supported the director's decisions, or to file a mandamus-type action against the NOGCC to attempt to obtain a directive regarding production. He testified that either of those steps would require notice to parties involved in the present litigation as well as to a reasonably extensive list of mineral interest holders. He did not believe that it would be fair to the parties for him to take either action due to the time and expense involved; rather, he believed that it would be more fitting for one of the parties to pursue any such steps independently.

On June 27, 2013, the district court entered an order modifying its prior orders requiring that the wells be made productive before sale. The court stated, "The receiver now reports he is unable to achieve production. The [NOGCC] has denied the receiver permission to operate, apparently as there is no current lease covering the wells." The court modified the December 2010 order requiring production before sale and removed the condition requiring production. The court stated that in other respects, the August 2007 order for sale and the December 2010 order remained in effect. The court directed the referee to "forthwith" sell the remaining interests of the

parties in the wells. The court set a further hearing for October 2013 to "determine a proper division order" and to obtain current lists of the working interest owners and the mineral interest owners.

The Appellants filed a motion for reconsideration or, in the alternative, to alter or amend, which was heard by the district court on July 22, 2013. The Appellants offered into evidence numerous exhibits, including the receiver's June 2012 report to the court on whether the requirements to achieve production could be satisfied and the director's December 2011 letter to the receiver discussed above.

On July 24, 2013, the district court entered an order denying the Appellants' motion, stating:

> The primary concern of the [Appellants] is that they want production resumed before the partition sale. Their arguments imply the receiver has not been diligent in returning production.
>
> In his reports to the [c]ourt and the parties, the receiver has set forth the difficulties in achieving production, and the delays anticipated in what he sees as possible means by which to achieve production, based on the information he has from the [NOGCC]. Those are set forth in his [June 2012] report . . . which was submitted in response to the [c]ourt's May . . . 2012 order that the receiver report on whether the requirements to achieve production could be satisfied.
>
> The previous orders of the [c]ourt in this case . . . direct sale of the working interest. The [r]eferee has made reports, and updated the reports, as to what can be offered for sale. The order which the [Appellants] seek to have reconsidered simply provides that the partition sale go forward without production. No party has offered any solid suggestion or proposal which would cause the [c]ourt to find the receiver's recommendations should not be followed.

The Appellants subsequently perfected their appeal to this court.

## ASSIGNMENTS OF ERROR

The Appellants assert that the district court erred in (1) receiving and relying on letters from the director of the NOGCC, (2) determining that the NOGCC had denied the receiver permission to operate and asserting that there was no current lease covering the wells, (3) directing the receiver to no longer pursue placing the oil wells into production prior to sale and directing the referee to proceed to sale without oil production, and (4) allowing the conduct of the receivership to continue when the receiver ignored, avoided, and failed to act upon numerous court directions.

## STANDARD OF REVIEW

[1] When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's decision. *Wisniewski v. Heartland Towing*, 287 Neb. 548, 844 N.W.2d 48 (2014).

[2] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 831 N.W.2d 696 (2013).

## ANALYSIS

*Jurisdiction.*

[3-5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014). Generally, only final orders are appealable. *Id*. Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *Carney v. Miller, supra*.

In determining the jurisdiction issue before the court in this appeal, we find it helpful to discuss the jurisdiction issues addressed in *Sutton III* and *Sutton IV*. In *Sutton III*, we concluded that the order appealed from was not a final order under Neb. Rev. Stat. § 25-1911 (Reissue 2008) because it did not fit under any of the three types of final orders described in § 25-1902. Nevertheless, we determined that we had appellate jurisdiction under Neb. Rev. Stat. § 25-1090 (Reissue 2008), which provides, in part, "All orders appointing receivers, giving them further directions, and disposing of the property may be appealed to the Court of Appeals in the same manner as final orders and decrees." We then proceeded to address the merits of the intervenor's appeal and found that the district court properly granted summary judgment to the receiver.

Our decision in *Sutton III* was affirmed by the Nebraska Supreme Court in *Sutton IV*, albeit on different grounds relative to the issue of jurisdiction. The Supreme Court disagreed with our analysis of § 25-1902, specifically our determination that the order in question did not fall within the second category of orders enumerated in § 25-1902, one that affects a substantial right made during a special proceeding. The Supreme Court disapproved of our determination that because the denial of the intervenor's claim was encompassed by the receivership created under chapter 25 of the Nebraska Revised Statutes, it was not a special proceeding, citing its abrogation of that proposition in later cases. The Supreme Court concluded instead that the order at issue was a final order from which an appeal may be taken. In view of that determination, the Supreme Court chose not to analyze the correctness of our determination that the order was final under § 25-1090. The Supreme Court affirmed this court's determination with respect to the grant of summary judgment in favor of the receiver.

Turning to the June 27, 2013, order at issue in this appeal, it essentially did three things: (1) It modified the December 2010 order requiring production before sale and removed the condition requiring production, (2) it confirmed that the previous orders for sale from August 2007 and December 2010 remained in effect, and (3) it directed the referee to "forthwith"

sell the remaining interests of the parties in the wells. The order also set a further hearing for October 2013 to determine a proper division order. The Appellants' motion for reconsideration or, in the alternative, to alter or amend was denied on July 24.

The Appellants assert that the order appealed from is a "final order" because it affects a substantial right in a special proceeding within the scope of § 25-1902 and because the order issued "further directions" which may be appealed under § 25-1090. The appellees and the successor receiver maintain that the order appealed from is not a final order under § 25-1902 and further that an interlocutory appeal under § 25-1090 regarding receivers is not merited.

With regard to § 25-1902, we must determine whether the order falls under the second type of orders enumerated therein, one which affects a substantial right made during a special proceeding. The appellees assert that the order in question merely continued the previous orders directing that the wells be sold and, as such, does not affect a substantial right. The Appellants point to the portion of the order removing the prior condition that the wells be placed into production before sale as affecting a substantial right. They argue that the order effectively changed numerous previous final orders and diminished the value of their property to be sold by the referee.

[6-8] A substantial right under § 25-1902 is an essential legal right. *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012). A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken. *Id*. Therefore, an order that completely disposes of the subject matter of the litigation in an action or proceeding both is final and affects a substantial right because it conclusively determines a claim or defense. *Id*.

It has been recognized that an order confirming a sale by a receiver is a final order from which an appeal can be taken. See, e.g., *Dickie v. Flamme Bros.*, 251 Neb. 910, 560 N.W.2d 762 (1997); *Lewis v. Gallemore*, 173 Neb. 441, 113 N.W.2d 595 (1962). The question before us, however, is whether an

order which occurs prior to the final sale and confirmation is a final order. In *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012), the Nebraska Supreme Court addressed whether an order directing a referee to sell real estate is a final order. The trial court had determined that physical partition of the real estate was not possible without great prejudice to the owners and therefore approved the referee's report and ordered the referee to sell the land at public sale. The Supreme Court concluded that the order was a final order under § 25-1902(2) as affecting a substantial right in a special proceeding. The Supreme Court noted:

> "In the context of multifaceted special proceedings that are designed to administer the affairs of a person, the word 'case' means a discrete phase of the proceedings. An order that ends a discrete phase of the proceedings affects a substantial right because it finally resolves the issues raised in that phase."

*In re Estate of McKillip*, 284 Neb. at 374, 820 N.W.2d at 875-76, quoting John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001).

The court in *In re Estate of McKillip*, in concluding that the order directing the referee to sell the real estate was a final, appealable order, recognized that while it may have been possible for the parties to appeal after a sale and confirmation, judicial economy, if nothing else, required resolution of that issue before a sale was held. The court further noted that distribution of the real estate was a major issue in the resolution of the proceedings and that resolving the distribution of the real estate would finally settle the issues raised in that phase of the probate.

Turning to the case at hand and applying the foregoing principles, we conclude that the orders appealed from affect a substantial right as defined above. The orders require the referee to *forthwith* sell the oil wells, without the necessity of their being placed into production prior to sale. The sale of the wells is the only remaining issue in this receivership proceeding. The removal of the requirement that the wells be placed into production prior to sale could arguably affect the marketability

of the wells and, as such, affects a substantial right of the parties who will receive the proceeds of the sale.

Further, even if the orders before us do not affect a substantial right, we conclude that the orders are appealable under § 25-1090, which provides, in part, "All orders appointing receivers, giving them further directions, and disposing of the property may be appealed to the Court of Appeals in the same manner as final orders and decrees." In *Sutton III*, 19 Neb. App. at 859, 820 N.W.2d at 305, this court noted that "the key last sentence of § 25-1090" had been in the statute intact (except for the reference to the Court of Appeals) since 1867 and that there is no legislative history available. Using the doctrine of statutory construction, this court concluded that the order being appealed in that case, that the receiver was not liable for the claim being brought by the intervenor, was a "direction" to the receiver from which an appeal is allowable. *Sutton III*, 19 Neb. App. at 860, 820 N.W.2d at 306. The Supreme Court in *Sutton IV* chose not to address the appealability of the order under § 25-1090, having determined that the order was in fact a final order under § 25-1902.

While there is little other case law available to assist us in applying § 25-1090, we note that under the predecessor statute, the Nebraska Supreme Court held that an order directing the receiver of a national bank to sell the property of the bank is an order giving a receiver "'further directions, and disposing of the property'" so as to be appealable. See *State v. Fawcett*, 58 Neb. 371, 374, 78 N.W. 636, 637 (1899).

The appellees argue that the order at issue is not a directive to a *receiver* because it directed the *referee* to proceed with the sale and because the Appellants, rather than the receiver, sought further direction from the court for the receiver. We disagree. The order in the instant case, removing the court's previous directive to the receiver to operate the wells and now permitting the wells to be sold before reaching operating status, is also a "direction" to the receiver, directing him to cease efforts at production. Further, we note Neb. Rev. Stat. § 25-1087 (Reissue 2008), which permits any party to apply to the court for further directions to the receiver "as may in the further progress of the cause become proper."

We conclude that § 25-1090, being a special statute relative to receivers, applies in this case such that we have jurisdiction to hear the appeal from the orders of June 27 and July 24, 2013, which orders contained directions to the receiver to cease efforts to bring the wells into production.

Having determined that we have jurisdiction to hear this appeal, we now turn to the merits of the Appellants' assigned errors.

*Receipt of Letters From NOGCC.*

The Appellants assert that the district court erred in receiving and relying on letters from the director of the NOGCC. Specifically, the Appellants argue that the court should not have received exhibits 602 through 607, which contain correspondence between the receiver and the director. Those particular exhibits were first offered by the receiver and received by the court at the January 2012 hearing without objection from the Appellants. Exhibits 602 through 607 were reoffered by the Appellants and received by the court at the July 2013 hearing on the motion for reconsideration. Presumably, the Appellants are actually referring to exhibit 619, a copy of the December 2011 letter from the director to the receiver offered by the appellees and received by the court at the March 2013 hearing. Exhibit 619 contains the same letter as does exhibit 607, the letter from the director containing his opinion that the lease had terminated because of nonproduction. The Appellants objected to the offer of exhibit 619 on the bases of foundation and hearsay and argued that the letter from the director did not purport to be an official act of the NOGCC.

[9-11] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013). To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012). Evidence objected to which

is substantially similar to evidence admitted without objection results in no prejudicial error. *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004).

At the March 2013 hearing, the receiver testified about his reasons for recommending that the wells be sold without the requirement of being placed into production. He testified about his unsuccessful attempts to bring the oil wells into production since his appointment as receiver and the rejection by the director. The NOGCC correspondence, including the letter marked as exhibit 619 at the March 2013 hearing, had previously been admitted without objection at the January 2012 hearing. This same letter concerning the director's opinion as to the validity of the lease was offered by the Appellants and admitted into evidence at the July 2013 hearing on the motion for reconsideration. Because the letter was admitted into evidence without objection at other hearings, we find no prejudicial error in the court's receipt of exhibit 619 at the March 2013 hearing. In addition, the letter from the director was referenced in the receiver's June 2012 report, which the Appellants offered as an exhibit in the July 2013 hearing, and as such, the letter itself is cumulative in nature insofar as it relates to whether the requirements to achieve production could be satisfied. This assigned error is without merit.

*Denial of Permission to
Operate Wells.*

The Appellants assert that the district court erred in determining that the NOGCC had denied the receiver permission to operate and asserting that there was no current lease covering the wells. They argue that the court erroneously "applied the [d]irector[']s letters to be a final decision of the [NOGCC]" and that the "reliance of the [d]istrict [c]ourt to assert that the [NOGCC] had made any determination is simply mistaken, erroneous, and contrary to law and fact." Brief for appellants at 26 and 27.

In its June 2013 order, the district court stated, "The receiver now reports he is unable to achieve production. The [NOGCC] has denied the receiver permission to operate, apparently as there is no current lease covering the wells." Although

the court's statement was framed in terms of denial by the NOGCC, rather than by the director, we do not read the court's statement as a finding that the NOGCC has made an official determination with respect to the operation of the wells or the validity of the lease. Nor does the court's statement show that the court itself made a determination as to the validity of the lease. The receiver testified at the March 2013 hearing that he was unable to achieve production and that the director had denied him permission to operate the wells. He testified that he had not sought any formal determination from the entire NOGCC. The court's statement, although perhaps not worded as carefully as it might have been, simply summarizes the evidence presented to it. We see no indication that the court misinterpreted the evidence as to who actually denied the receiver permission to operate the wells.

Further, our de novo review of the record reveals that the receiver's unsuccessful attempts to bring the wells into production, based in part on the denial by the director, were only part of the evidence presented to the district court. While this evidence obviously played a big part in the district court's decision to remove the production requirement, the evidence also shows that it was the anticipated difficulty and additional delays involved in making further attempts to secure NOGCC permission to resume production which factored into the receiver's recommendation and the district court's decision. As such, we reject the Appellants' suggestion that the district court relied only on the letters from the director in making its decision.

This assignment of error is without merit.

*Removal of Production Requirement.*

The Appellants assert that the district court erred in directing the receiver to no longer pursue placing the oil wells into production prior to sale and in directing the referee to proceed to sale without oil production.

[12] The Appellants argue that the district court erroneously suggests no current lease existed and then proceed to argue that the evidence directly and legally established that a valid lease still existed. They then discuss, at length, certain

oil and gas law and terminology and various lease provisions. Despite arguing at length that the lease is still valid, the Appellants correctly note that this issue was never tried by the court. Accordingly, we decline to address the validity of the lease. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014). Even if we were to consider the Appellants' arguments on this issue, there is still evidence in the record that the receiver has been denied permission to operate the wells and that the steps to achieve production will be time consuming and expensive.

The issue on appeal here is not whether the lease is valid but whether the district court erred in removing the requirement that the receiver bring the wells into production before sale by the referee. The Appellants argue that the court's decision "has wiped out and destroyed the partition of the mineral & leasehold interests," essentially leaving nothing for the referee to sell. Brief for appellants at 37. They argue further that sale of oil well equipment and interests in nonproducing wells will yield a minimal purchase price. We note again that the court did not make a determination about the validity of the lease. The court simply removed the requirement that the receiver bring the wells into production and directed the referee to "forthwith sell those remaining interests of the parties in the wells." There is nothing in the district court's decision or this opinion which prevents the parties from pursuing further action before the NOGCC with respect to the validity of the lease.

[13] Equity strives to do justice. Equity is not a rigid concept but, instead, is determined on a case-by-case basis according to concepts of justice and fairness. *Floral Lawns Memorial Gardens Assn. v. Becker*, 284 Neb. 532, 822 N.W.2d 692 (2012). The receiver presented evidence that he had sought permission on multiple occasions to operate the wells, that the director denied all of his requests, and that the steps to achieve production would be costly and time consuming. This case has been ongoing for more than 10 years. The amended petition in the underlying action in this case was filed at the

end of 2002 or beginning of 2003. Under the circumstances of this case, we conclude that the district court did not err in removing the production requirement and directing the referee to proceed to sale without production.

*Receiver's Conduct.*

[14] The Appellants assert that the district court erred in "allowing the conduct of the receivership to continue wherein the [r]eceiver ignored, avoided, and failed to act upon numerous directions and instructions to maintain and later commence operations of oil wells, contrary to law and the facts." It is not entirely clear what the Appellants mean by this assignment of error or where it is specifically argued in their brief. The Appellants do make several assertions about the receiver's lack of due diligence in bringing the wells into production, and they attempt to assign blame for the failure to achieve production to both the receiver and the court. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the party's brief. *Rodehorst Bros. v. City of Norfolk Bd. of Adjustment*, 287 Neb. 779, 844 N.W.2d 755 (2014). To the extent that the Appellants are arguing that the receiver disobeyed orders of the district court or committed some form of malfeasance, that issue was not presented to or passed on by the district court. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014). This assignment of error is without merit.

## CONCLUSION

We find no error in the district court's decision directing the referee to sell the remaining interests of the parties in the oil wells and removing the condition that the receiver place the wells into production before sale.

Affirmed.