Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/17/2018 09:09 AM CDT

Kenneth D. Priesner and Laurie Wrage Priesner,
appellants, v. Jim L. Starry and Bayview
Townhouses, appellees.

___ N.W.2d ___

Filed May 25, 2018.    No. S-17-713.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does
   not involve a factual dispute is determined by an appellate court as a
   matter of law.
2. **Receivers: Judgments: Appeal and Error.** An order giving directions
   to a receiver will not be disturbed on review in the absence of an abuse
   of discretion.
3. **Appeal and Error.** An appellate court considers only arguments that
   are both specifically assigned and specifically argued in the appel-
   late brief.
4. **Jurisdiction: Final Orders: Time: Appeal and Error.** A notice of
   appeal must be filed with 30 days of the entry of a final order or
   judgment.
5. **Final Orders: Appeal and Error.** Any issue decided in a prior final
   order that neither party timely appealed from is foreclosed from review
   in an appeal from a subsequent final order or final judgment in the case.
6. **Jurisdiction: Time: Appeal and Error.** A party's failure to timely
   appeal from a final order prevents an appellate court from exercising
   jurisdiction over the issues that were raised and decided in that order.
7. **Receivers: Final Orders: Legislature: Jurisdiction: Appeal and
   Error.** The Legislature has mandated by the plain language of Neb.
   Rev. Stat. § 25-1090 (Reissue 2016) that orders placing property into
   receivership, giving directions relating to the receiver's powers over the
   property, and disposing of receivership property are final for purposes
   of appellate jurisdiction under Neb. Rev. Stat. §§ 25-1911 and 25-1912
   (Reissue 2016).
8. **Final Orders: Appeal and Error.** There is no "second bite at the apple"
   when it comes to an appellant's opportunity to appeal a final order.

9. **Receivers: Words and Phrases.** A receiver is "the arm of the court."
10. **Receivers: Judgments: Appeal and Error.** If the court has not abused its discretion in the giving of the directions to the receiver, an appellate court will not disturb actions by the receiver that were in conformity with those directions.

Appeal from the District Court for Keith County: DONALD E. ROWLANDS, Judge. Affirmed.

Jeffrey S. Armour, of Armour Law, P.C., L.L.O., for appellants.

Gary F. Burke, of Law Office of Gary F. Burke, L.L.C., for appellee Jim L. Starry.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, and FUNKE, JJ., and HARDER and NOAKES, District Judges.

HARDER, District Judge.

## NATURE OF CASE

This case involves protracted litigation by the minority owners of a condominium against the majority owner, who repeatedly failed to comply with the declaration of covenants, conditions, and restrictions. The court eventually appointed a receiver to sell the condominium at a public sale after determining that the co-owners would "never be able to work together." The condominium was offered at a public sale. The plaintiffs appeal from the court's subsequent order confirming the sale.

## BACKGROUND

Kenneth D. Priesner and Laurie Wrage Priesner own one of four condominium units in the Bayview Townhouses, a condominium. They purchased the unit in 1983, when the condominium was built, and they have lived there since.

Jim L. Starry purchased the remaining three units and a detached garage in 1994 and 1995. He lives in Colorado and rents the units out.

The Priesners and Starry are members of the Bayview Townhouse Association (Association). The condominium is governed by a "Declaration of Covenants, Conditions and Restrictions of Bayview Townhouses" (Declaration).

Under the Declaration, Starry had control over the Association as the majority owner. Since Starry obtained his majority ownership in 1995, the Association ceased having meetings, collecting assessments, and maintaining the common elements of the condominium.

In 2013, the Priesners filed a complaint against Starry and the Association for damages and specific performance. The action concerned conversion of Association and insurance funds, failure to maintain proper insurance, and Starry's negligent repair of the condominium roof in 1997, which eventually resulted in the need to replace the roof and siding.

On February 24, 2014, the court awarded the Priesners compensation for interior damage to the Priesners' unit resulting from Starry's negligent repair of the roof, as well as the Priesners' share of insurance proceeds that Starry had received but never utilized for repairs. The court ordered a lien on Starry's units in the amount of damages awarded. The court ordered specific performance against Starry to purchase blanket property and liability insurance, hold an association meeting, elect a board of directors, and prepare an annual budget that would include the removal and replacement of the roof and siding.

The court then set forth:

> In the event the parties are unable to reach an agreement on any of the requirements set forth in this paragraph, or for the payment of the costs associated herewith, either party may apply to this Court for the appointment of a receiver to manage the condominium . . . and/or to sell the condominium . . . at public sale.

The 2014 judgment was affirmed as modified by the Nebraska Court of Appeals in an unpublished memorandum opinion filed February 25, 2015, in case No. A-14-330. The

Court of Appeals held that the district court had erred in not awarding to the Priesners the portion of the converted insurance proceeds attributable to damage to the Priesners' shed. It found no reversible error in the court's order of specific performance that determined the Priesners would share the costs for replacing the roof and siding in proportion to their unit interest. The Court of Appeals noted in this regard that the Priesners had, like Starry, failed to request meetings, notify the Association of necessary repairs or upkeep, or paid any Association dues.

After the 2014 judgment, the Priesners eventually began acting as a quorum pursuant to their rights under the Declaration when Starry repeatedly failed to call for or attend Association meetings. By October 2015, the Association had apparently filed liens against Starry's units for Starry's share of special assessments to repair and replace the roof and siding of the condominium.

But the Association did not foreclose on these liens pursuant to Neb. Rev. Stat. § 76-874 (Cum. Supp. 2016). Instead, in October 2015, the Priesners filed an application for injunctive relief, under the same docket number as the 2014 judgment. Starry had apparently satisfied the damages portion of the judgment. The Priesners alleged, however, that Starry had failed to comply with the order of specific performance. The Priesners asked that Starry be enjoined from acting on behalf of the Association or conducting construction work on the exterior of the condominium, alleging that Starry had unilaterally arranged for unqualified workers to replace the siding and the roof.

The court granted the Priesners a temporary injunction and restraining order during the pendency of their application for injunctive relief.

In response, Starry filed an application for the appointment of a receiver, noting that he was temporarily enjoined from holding Association meetings or acting for the benefit of the condominium. The court initially denied the motion until it

was able to conduct a hearing on the Priesners' contempt allegation. At the hearing, Starry renewed his motion to appoint a receiver, explaining that he wished to resolve the dispute between the parties by selling the condominium.

## MARCH 14, 2016, ORDER TO SELL
### ALL UNITS AND COMMON AREAS

In a journal entry file stamped March 14, 2016, the court found that Starry was not in contempt of the 2014 judgment and "sustain[ed] [Starry's] oral motion to appoint a [r]eceiver to sell all of the units and common areas" of the condominium. The court found that the parties would "never be able to work together" to operate the Association for their mutual benefit. The court set a hearing for April 4 to determine who should be appointed as receiver.

The receiver was selected by the court, and a journal entry was filed on July 13, 2016, stating that the receiver was appointed. A detailed "Order Appointing Receiver" was issued on July 14, the same day the receiver executed his oath. An amended order appointing the receiver was filed on August 2 to correct scrivener's errors.

## AUGUST 2, 2016, ORDER APPOINTING
### RECEIVER WITH DIRECTIONS

The operative order of appointment described that the court had ordered the sale of the property at a public sale. The property was described as "four (4) townhouse units and collective common elements."

The order stated that the receiver should immediately take charge, manage, operate, or discontinue all or part of the operations in his sole discretion and appoint such managers or management companies, leasing agents, listing agents, accountants, attorneys, and other professionals as he deemed appropriate and necessary to assist in the management, operation, or discontinuance of its operations, and protection and operation of the property according to the Declaration.

The order set forth that the receiver had all powers and authority reasonably necessary to accomplish his purposes.

The order set forth numerous powers, including, but not limited to (1) taking charge and possession of the property subject to the Declaration and all improvements thereto and all personal property used or associated therewith, regardless of where such property is located; (2) repairing, replacing, maintaining, and protecting the receivership property and paying for ordinary and necessary maintenance thereto, including deferred maintenance and taking such other steps as the receiver deems appropriate to prevent waste; (3) incurring indebtedness to the extent required to perform his duties as receiver in securing such indebtedness by granting a lien on the receivership property that is prior and superior to any lien other than the mortgage and tax liens; (4) using "income, rents, and receipts from the Receivership Property," for the payment of, in order of priority, administrative expenses, the receiver's fees and costs, the receiver's attorney and consultant fees and costs, expenses of the receivership, any debts secured by a lien, principal and interest payments, and "only after paying all expenses of the Receivership and all arrearages in principal and interest shall the Receiver pay pre-Receivership debts and/or liens of any nature and only after a determination is made by the Receiver that such pre-Receivership debts and /or liens of any nature are properly payable"; (5) making determinations as to the nature and validity of any prereceivership property debt or lien of any nature assessed according to the Declaration and whether it is properly payable or dischargeable by the receiver; and (6) doing "any and all acts necessary and convenient or incidental" to "see to the sale of the Property at Public Sale."

NOVEMBER 15, 2016, ORDER TO SELL
WITHOUT REPLACING ROOF AND SIDING

The court issued a written order on November 15, 2016, following a hearing in which the receiver described that the parties appeared financially incapable of paying the deposits

required to replace the condominium roof and siding as ordered in the prior judgment. The order set forth that the "Receiver is authorized to sell all units of the [condominium] at public sale, as he cannot obtain funding to make repairs" and "[t]he property can be sold not subject to any prior orders regarding work required to be performed prior to the sale."

### FEBRUARY 8, 2017, ORDER
### ACKNOWLEDGING REPAIRS

A status hearing was subsequently held in February 2017, at which point the receiver expressed his intention to conduct substantial repairs on one of Starry's units that was in a dilapidated state. The receiver noted that he had to evict the tenant living there. The court issued an order on February 8, 2017, noting that the receiver had given "a verbal update of the Receiver's anticipated repairs, and proposed sale date."

### ORDER RELEASING ALL LIENS BY
### PRIESNERS AND ASSOCIATION

In anticipation of the public sale, on May 2, 2017, the court issued an order declaring that any liens upon the condominium by the Priesners individually or on behalf of the Association were to be released and "will attach solely to any proceeds of . . . Starry . . . after the sale." The court explained that the receiver's fees and expenses would be determined at a later hearing.

### JUNE 28, 2017, ORDER
### CONFIRMING SALE

The public sale took place on May 22, 2017. Thereafter, the Priesners filed a motion to set an evidentiary hearing "to receive evidence on the matter of approving or denying the May 22, 2017 sale of the Townhouses and on the matter of repair and receiver related costs and the distribution of proceeds." The receiver, for his part, requested a hearing "confirming the sale of the property, releasing liens between the parties, and any other order to facilitate the closing of the real property." The Priesners then moved for a court-ordered

appraisal of each of the condominium units, payment by the receiver of property damage to the Priesners' windows allegedly caused by the receiver's contractor, and the appointment of an "uninterested closing agent" in the event the court approved the public sale.

A hearing was held on June 14, 2017. Exhibits were entered into evidence by the receiver showing $1,080 in mowing expenses for the condominium, $688.53 in sewage-related expenses for the condominium, $11,205 in receiver fees, $812 in costs related to the public sale, and $10,628.38 in repairs and maintenance of one of Starry's units. Invoices totaling over $10,000 in repairs and maintenance of Starry's unit, as well as $1,080 in mowing, were from ASAP Construction, Inc.

The court accepted into evidence an itemized invoice of the receiver's time spent in his duties as receiver for the condominium, up to the time of the hearing, which totaled $11,205 in fees. The receiver testified that the work performed was generally attributable to both Starry's and the Priesners' units. He believed that it made sense to simply distribute the total invoice to the parties in proportion to their unit shares. But the receiver admitted upon examination by the Priesners' counsel that approximately $800 of his charges were for time mostly attributable to Starry's units.

The receiver testified at the hearing as to the bidding process leading up to the sale of the condominium. The receiver stated that initial bids were for the units individually. Then the Priesners' unit was offered separately from Starry's combined units. Finally, bidders were offered to bid on the condominium as a whole. A summary including each bid was entered into evidence.

When the bids were for the units individually, no one bid on Starry's units. The Priesners were the only bidders for their unit, bidding $12,000. There were three bids by two bidders on the separate garage, with the Priesners placing the largest bid at $4,000.

When the bidders could bid on Starry's combined units and the Priesners' individual unit separately, there were three bids

by two bidders on the Priesners' unit. The largest bid on the Priesners' unit was $30,000, by the Priesners. There were five bids by three bidders on all of Starry's combined units, plus the garage. The highest bid was $128,000.

After that, the bidding for the condominium as a whole took place. Bidders were informed that the opening bid had to exceed $158,000, the total of the previous bidding for the Priesners' unit separately from Starry's combined units. Two bidders placed nine bids. The winning bid was $177,000.

The receiver proposed distributing the proceeds of the public sale, after payment of liens and receivership fees and expenses, in proportion to the respective unit interests with the caveat that proportionate deduction from those proceeds be limited to his fees, costs relating to the public sale, and maintenance of the common areas of the condominium.

The receiver suggested that the expenses attributable to the repair and maintenance of Starry's units be deducted solely from Starry's share of the sale proceeds. In addition, the receiver suggested that Starry and the Priesners would be responsible, out of their respective shares, for their respective mortgage liens and property taxes. Starry had a mortgage lien against his properties in the amount of $101,243.97. The Priesners had a mortgage lien in the amount of approximately $11,000. Real estate taxes for Starry's properties were a total of $2,873.10, while the Priesners' real estate taxes were $882.94.

The receiver also asked that the court reiterate its prior ruling that any previous liens or claims by the Priesners or the Association were released and would be dealt with "personally." In this regard, the receiver made reference to a lien filed by the Association against Starry. But no lien was offered into evidence by either party in any of the hearings.

The court filed a journal entry on June 28, 2017. The order ratified and confirmed the public sale and sustained the Priesners' request to use an independent closing agent. The court directed the receiver to pay out of the sale proceeds of the public sale all real estate taxes, closing costs, mortgage

liens, and the receiver's fees and expenses up to that date and as reflected in the exhibit entered into evidence at the hearing. Those expenses included a bill from ASAP Construction in the amount of $11,105.17. Any remaining funds would be paid into the registry of the court.

The court explained that after the receiver had filed the final report of income and expenses and his remaining fees, a final hearing would be held. If any funds remained after the receiver had been fully paid and discharged, "the Court will again consider [the Priesners'] request to present evidence from an appraiser as to the fair market value of each of the five units as of May 22, 2017 and [the Priesners'] request for payment to repair the window."

The court's order set forth that "[a]ll other claims by either party or the Association against any party to this action are released, and will be filed in a separate proceeding."

Finally, the court stated that its order was interlocutory and not immediately appealable.

The Priesners appeal the June 28, 2017, order.

## ASSIGNMENTS OF ERROR

The Priesners assign that the district court erred in (1) ratifying and confirming in all respects the sale of the condominium; (2) finding that there was active bidding at the sale; (3) finding that a subsequent sale would not generate a greater amount; (4) ordering payment by the receiver of his fees and expenses, including ASAP Construction's bill for its work on Starry's unit; (5) releasing all other claims by either party or the Association against any party, to be filed in a separate proceeding; and (6) ordering that its order shall be interlocutory.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[1]

---

[1] *In re Interest of Zachary B.*, 299 Neb. 187, 907 N.W.2d 311 (2018).

[2] An order giving directions to a receiver will not be disturbed on review in the absence of an abuse of discretion.[2]

## ANALYSIS

[3] On appeal, we consider only arguments that are both specifically assigned and specifically argued in the appellate brief.[3] Considering what was specifically assigned and argued, the Priesners' assignments of error can be distilled into four broad contentions. First, the Priesners argue that the court erred in ordering the sale of the condominium as a whole, including their unit. Second, and alternatively, they challenge the method of the sale, because the receiver did not offer up the condominium as a whole for bids before offering the units individually. Third, the Priesners challenge the distribution of the sale proceeds to pay receiver fees and expenses attributable solely to Starry's units. Finally, the Priesners contest the release of any Association liens on the property.

However, before reaching the merits of these contentions, it is our duty to determine whether we have jurisdiction in this appeal over each of the issues presented.[4] Neb. Rev. Stat. § 25-1911 (Reissue 2016) gives this court jurisdiction to review a "judgment rendered or final order made by the district court." Neb. Rev. Stat. § 25-1912 (Reissue 2016) further provides that appeals from a judgment rendered or final order made by the district court is not perfected unless a notice of intention to prosecute an appeal is filed with the district court within 30 days of the judgment or final order, as provided under that statute.

[4-6] Under these statutes, to vest an appellate court with jurisdiction, a notice of appeal must be filed with 30 days of

---

[2] See *State, ex rel. Sorensen, v. Nebraska State Bank*, 124 Neb. 449, 247 N.W. 31 (1933).

[3] See *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[4] See, e.g., *In re Interest of Zachary B., supra* note 1; *Ginger Cove Common Area Co. v. Wiekhorst*, 296 Neb. 416, 893 N.W.2d 467 (2017).

the entry of a final order or judgment.[5] Furthermore, any issue decided in a prior final order that neither party timely appealed from is foreclosed from review in an appeal from a subsequent final order or final judgment in the case.[6] A party's failure to timely appeal from a final order prevents an appellate court from exercising jurisdiction over the issues that were raised and decided in that order.[7]

Neb. Rev. Stat. § 25-1902 (Reissue 2016) generally defines a final order as an order "affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment." However, Neb. Rev. Stat. § 25-1090 (Reissue 2016) more specifically addresses orders appointing receivers, giving them further directions, and disposing of property. Section 25-1090 states in relevant part that "[a]ll orders appointing receivers, giving them further directions, and disposing of the property may be appealed to the Court of Appeals in the same manner as final orders and decrees." Under Neb. Rev. Stat. § 25-1087 (Reissue 2016), every order appointing a receiver must contain special directions with respect to the receiver's powers and duties and the court may give further directions as may become proper in the further progress of the cause.

Since its passage in 1867, we have held that orders appointing receivers, giving them further directions, and disposing of property are final orders pursuant to § 25-1090, without additionally determining whether they would be final under

---

[5] See *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018).

[6] See, e.g., *Ginger Cove Common Area Co. v. Wiekhorst, supra* note 4; *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013); *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008); *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997). See, also, *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005).

[7] See, e.g., *In re Interest of Zachary B., supra* note 1; *Pinnacle Enters. v. City of Papillion, supra* note 6.

§ 25-1902.[8] Section § 25-1090 has been described as the more specific statute concerning the finality of such orders and thus controlling over the more general description of final orders found in § 25-1902.[9]

[7] Section 25-1090 was enacted the same year as § 25-1902. We have explained that finality under § 25-1902 depends most fundamentally on whether the right affected by the order could effectively be vindicated through an appeal from the final judgment, or instead would be significantly undermined or irrevocably lost by postponing appellate review.[10] We have observed that receiverships are a harsh and drastic remedy, not to be implemented lightly.[11] Though no legislative history is available, the Legislature presumably determined that orders placing property into receivership, giving directions relating to the receiver's powers over the property, and disposing of receivership property, affect rights that would be significantly undermined by postponing appellate review. The Legislature has mandated by the plain language of § 25-1090 that orders placing property into receivership, giving directions relating to the receiver's powers over the property, and disposing of receivership property are final for purposes of appellate jurisdiction under §§ 25-1911 and 25-1912.

The order presently appealed, confirming the public sale, is a final order under § 25-1090 because it is both an order

---

[8] See, *Robertson v. Southwood*, 233 Neb. 685, 447 N.W.2d 616 (1989); *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989); *Lewis v. Gallemore*, 173 Neb. 441, 113 N.W.2d 595 (1962); *State v. Fawcett*, 58 Neb. 371, 78 N.W. 636 (1899). See, also, *Floral Lawns Memorial Gardens Assn. v. Becker*, 284 Neb. 532, 822 N.W.2d 692 (2012); *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001); *Dickie v. Flamme Bros.*, 251 Neb. 910, 560 N.W.2d 762 (1997); *Sutton v. Killham*, 22 Neb. App. 257, 854 N.W.2d 320 (2014).

[9] See *Sutton v. Killham, supra* note 8.

[10] See, e.g., *Ginger Cove Common Area Co. v. Wiekhorst, supra* note 4; *In re Adoption of Madysen S.*, 293 Neb. 646, 879 N.W.2d 34 (2016).

[11] *Floral Lawns Memorial Gardens Assn. v. Becker, supra* note 8.

disposing of receivership property and it gives the receiver directions. The district court's statement that the order was not directly appealable is of no effect.

Nevertheless, we do not have jurisdiction in this appeal from the June 28, 2017, order over every argument raised in the Priesners' appellate brief. The Priesners admit that they did not timely appeal prior orders placing their property into the receivership and giving directions relating to the receiver's powers over such property.

### SELLING PRIESNERS' UNIT AND CONDOMINIUM AS WHOLE

Upon our review of the record, we find that we lack jurisdiction to consider the Priesners' challenge in this appeal to the court's direction to sell their unit and to sell the condominium as a whole. That issue was determined by the July 14, 2016, order appointing the receiver with direction, which stated that the receiver had all powers and authority reasonably necessary to accomplish the receiver's purpose of selling the property at a public sale. The property was described as "four (4) townhouse units and collective common elements." This description clearly encompassed the Priesners' unit and the possible sale of the condominium as a whole. The "property" directed to be sold was described in the singular, wholly encompassing both the personally owned units and the common areas.

The Priesners in fact admitted at oral argument that they did not appeal this order, because they did not feel at the time that the sale would necessarily be disadvantageous to them. We cannot address the order now simply because the sale did not turn out as the Priesners had hoped. Because the Priesners did not appeal from the order of appointment directing the receiver to sell the entire condominium, we express no opinion as to the propriety of such an order in this case. We lack jurisdiction over any issue raised in this appeal concerning the propriety of the order to sell the condominium, including the Priesners' unit.

## Release of Liens

For similar reasons, we cannot address the Priesners' argument regarding the court's release of alleged liens they and the Association had against the condominium as a whole or any of its units. In an order dated May 2, 2017, the court rejected the Priesners' offer to buy the condominium without a public sale and directed the receiver to proceed with a public sale. Relating to that future public sale, the court ruled that any liens claimed by the Priesners individually or on behalf of the Association "are released and will attach solely to any proceeds of . . . Starry . . . after the sale." This order followed a hearing in which the receiver had expressed concern over the public sale in light of liens registered on the property.

[8] The May 2, 2017, release of the liens was part of the directions to the receiver to continue with the planned sale. It was therefore final under § 25-1090. Because the Priesners did not timely appeal this order of further direction to the receiver, we are foreclosed from addressing it now in the appeal from the order confirming the sale. The order was not revived by the fact that the court reiterated in its order confirming the sale that those liens were released. There is no "second bite at the apple" when it comes to an appellant's opportunity to appeal a final order.[12]

We find no impediment to addressing the Priesners' remaining two arguments challenging the order of the bidding process and the distribution of sale proceeds to pay ASAP Construction for work performed on Starry's unit and for the receiver's time spent managing Starry's unit and preparing it for sale. We first address the bidding process.

## Order of Bidding

The Priesners assert that the bidding process was unfair because the condominium units were offered individually before the bids were received for the condominium as a

---

[12] See, e.g., *In re Interest of Zachary B., supra* note 1; *Pinnacle Enters. v. City of Papillion, supra* note 6.

whole. The Priesners do not assert that there were insufficient bidders or that there was not active bidding. Rather, the Priesners complain that they did not know what amount for their individual bid on their property would be sufficient to outbid bidders when the condominium was offered as a whole subsequent to the offers by individual units. As a result of such lack of information, which they allege was inherent to the order of bidding, the Priesners allege they lost their property when they bid too low. Had the bidding process started with the condominium as a whole, the Priesners argue they could have tailored their bid on their individual unit to ensure it would have been the winning bid.

At the hearing on June 14, 2017, the Priesners presented little evidence as to the maximum amount they were able to bid or how they determined what amount to bid. Other than general principles of equity, the Priesners present no law indicating that a condominium should be offered at a public sale as a whole first and then by unit—as opposed to the other way around. The Priesners assert that they should not have been expected to "conspire" with another bidder in order to be the successful bidder under the method that the bidding was conducted.[13] But even if the order of bidding had been conducted the other way around, the Priesners do not explain how they would know the bid amounts by the other bidders on the other individual units, in order to be able to tailor a bid that, in combination with the individual bids for the other units, would exceed the prior highest bid on the condominium as a whole.

The order of the sale was within the receiver's broad powers as set forth in the district court's orders. Though the Priesners rely on a statement during a hearing in which the judge apparently envisioned offering the condominium as a whole and then the units individually, that was not stated as a directive. More importantly, that statement was never memorialized in any order of direction to the receiver.

---

[13] Brief for appellants at 18.

[9,10] A receiver is "'the arm of the court.'"[14] If the court has not abused its discretion in the giving of the directions to the receiver, we will not disturb actions by the receiver that were in conformity with those directions.[15] We find no abuse of discretion in the broad powers conferred by the court upon the receiver concerning the manner in which he conducted the public sale.

PAYMENT FROM PROCEEDS OF COSTS
AND FEES ASSOCIATED WITH
STARRY'S UNIT

The Priesners' last argument is that the court erred in its June 28, 2017, order by directing the payment of work performed on Starry's units from the sale proceeds of the condominium.

The Priesners argue that this work should not be paid from the public sale proceeds because the work was unauthorized and outside the scope of the powers conferred through the order of appointment with direction. According to the Priesners, the court's order of appointment limited the receiver's authority to the exterior unit structures and common areas, and the receiver lacked any power to manage Starry's tenants or repair Starry's individual units.

We disagree. The order of appointment with direction described the property as the "four (4) townhouse units and collective common elements." Nothing in the order limited the receiver's authority to the "exterior" of the units.[16] To the contrary, the order described the receiver's power to hire leasing agents and take charge of personal property "regardless of where such property is located."

The Priesners also assert that the work on Starry's unit was contrary to the court's order of further direction on November 15, 2016, which the Priesners assert was an order to sell

---

[14] *State v. Bank of Rushville*, 57 Neb. 608, 610, 78 N.W. 281, 282 (1899).

[15] *Id.*

[16] See brief for appellants at 22.

the property "as-is."[17] But the November 15 order stated: "Receiver is authorized to sell all units of the [condominium] at public sale, as he cannot obtain funding to make repairs" and "[t]he property can be sold not subject to any prior orders regarding work required to be performed prior to the sale." The only work required by any prior order at that time was the 2014 judgment ordering the siding and roof replacement. The November 15 order did not refer to the repairs on Starry's unit that were later discovered and deemed by the receiver necessary to make the condominium sellable at a public sale. Nor did the November 15 order generally mandate that the property was to be sold "as-is."

The Priesners further assert that the receiver should not be paid for work performed on Starry's units because the receiver failed to comply with the court's original directive to serve "as custodian of the Declaration for the benefit of all parties subject to the Declaration." The Priesners' argument in this regard is somewhat unclear. They seem to reiterate the argument that the receiver was limited through this directive to the common areas and exterior of the units. But even if the unit owners had no authority under the Declaration over each other's units, the receiver's powers were not limited in the order of appointment with direction to the powers conferred under the Declaration. As already discussed, the order of appointment with direction gave the receiver broad powers over the property to be sold.

Additionally, the Priesners argue that the receiver did not comply with the court's directive to act as custodian of the Declaration for the benefit of all parties, because the receiver spent time and money on Starry's units, but not on the Priesners' unit. The Priesners do not assert, however, that their unit required any attention in order to maintain it until the sale or in order to make it sellable. Thus, we find no merit to this argument.

---

[17] *Id*. at 21.

Finally, the Priesners take issue with the necessity of the repairs to one of Starry's units. The receiver had explained to the court that the unit contained water damage, extensively damaged drywall, and mold throughout. We find that the receiver's determination that these repairs were necessary to make the unit sellable was within the broad scope of the receiver's powers to act toward the ultimate goal of selling the condominium at a public sale.

In sum, the Priesners fail to set forth sufficient reasons for this court to reverse the district court's judgment that, in a public sale of the condominium as a whole, it was appropriate to pay from the singular proceeds of the sale work performed on one of the units with the purpose of ensuring that the property as a whole was sellable. While we sympathize with the Priesners' assertions that they should not have to subsidize Starry's neglect, that predicament fundamentally stems from the court's order to sell the property as a whole. As discussed, the issues we may reach in this appeal are limited by the Priesners' failure to timely challenge prior final orders. We also observe that the inequity claimed by the Priesners may still be addressed in a future hearing determining the distribution of the remaining sale proceeds.

## CONCLUSION

For the foregoing reasons, we affirm the lower court's order confirming the public sale.

Affirmed.